(No. 6020. October 17, 1933.)

STATE, Respondent, v. JAMES BROWN, Appellant.

[26 Pac. (2d) 131.]

W. A. Ricks, for Appellant.

C. A. Bandel and J. H. Peterson, for Respondent.

WERNETTE, J.—The appellant, James Brown, was convicted of the crime of attempt to commit arson. A new trial was denied by the district court and this appeal is

from the judgment of conviction and order denying a motion for a new trial.

The necessary facts to a decision of this case will be discussed in the opinion.

 Appellant assigns numerous errors, which will be considered in their order. Appellant's first assignment is that the court erred in not giving his requested instruction number 1, as follows:

"You are instructed that the corroboration which the statute demands in this case, independent of the testimony of the accomplices must not only show that a crime has been committed, but that defendant is implicated in its commission."

The court did not err in refusing this instruction, the same having been fully covered by instructions number 12, 13 and 14, given by the court, which correctly state the law, as follows:

"Instruction No. 12.

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

"Instruction No. 13.

"You are instructed that an accomplice cannot, either by his own declarations, or otherwise, corroborate himself, nor can an accomplice corroborate an accomplice."

"Instruction No. 14.

"No general rule can be stated with respect to the *quantum* of evidence corroborating an accomplice's testimony which is necessary to warrant a conviction; each case must be governed by its own circumstances, keeping in view the nature of the crime, the character of the accomplice's testimony, and the general requirement with respect to corroboration. Where the circumstances point to the guilt of the accused, independent of the accomplice's

testimony, such circumstantial evidence may be sufficient corroboration of the accomplice's testimony to sustain a conviction. It is not necessary that the testimony of an accomplice be corroborated in every detail. Any corroborative evidence legitimately tending to connect the defendant with the commission of a crime may be sufficient to warrant a conviction, although standing by itself it would not be sufficient proof of defendant's guilt.

"And while it is not necessary that an accomplice be corroborated in every respect, it is necessary that there be corroborating evidence upon some material fact or circumstance which, in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." (Section 19–2017, Idaho Code Annotated.)

All instructions must be considered and construed together, and if the instructions, as a whole, correctly state the law, the judgment will be affirmed. It is not error to refuse to give a requested instruction where the subject matter thereof is fully and fairly covered by the instruction given by the court. (*State v. Cosler*, 39 Ida. 519, 228 Pac. 277.)

Appellant next complains that the court erred in refusing to give his requested instruction number 3, which reads as follows:

"You are instructed that the alleged identification of the exhibits introduced in evidence is, as a matter of law, insufficient corroboration of the testimony of Bert Rowe or the other accomplices."

It is the contention of appellant that no one but Bert Rowe, confessed accomplice, identified the exhibits consisting of gasoline cans and other paraphernalia used in the commission of the crime. The record does not bear out such contention. The sheriff identified the exhibits, consisting of gasoline cans, rugs and gunny sacks, as those found at the Riverside Gardens soon after the attempt to commit the offense.

L. M. Founds, who was operating a gasoline service station, also gave substantial testimony tending towards identifying the exhibits, having seen gasoline cans and other paraphernalia in the automobile driven by Bert Rowe shortly before the commission of the crime, all of which, as described by the witness, were similar, if not identical to that found at the Riverside Gardens immediately after the crime.

Emil Zitlau, also testified to sufficient facts pertaining to the exhibits to identify the same. Appellant takes the position, however, that Zitlau was an accomplice and that one accomplice cannot corroborate another accomplice. The question as to whether he was an accomplice was for the jury to decide, as hereinafter pointed out, and it is quite likely the jury found that he wasn't. But assuming, yet not conceding, that he was, there is nothing in the law to prevent an accomplice to testify to facts the same as any other witness. The law merely requires that there must be corroboration of the testimony of the accomplice before a conviction can be had. (Section 19–2017, Idaho Code Annotated.) Under said section corroborating testimony need only tend to connect the defendant with the crime. It may be slight. (*People v. McLean,* 84 Cal. 480, 24 Pac. 32.) And it need only go to one material fact. (*State v. Knudtson,* 11 Ida. 524, 83 Pac. 226.) And the corroboration may be entirely circumstantial. (*State v. Gillum,* 39 Ida. 457, 228 Pac. 334. See, also, *State v. Orr, ante,* p. 452, 24 Pac. (2d) 679; *State v. Whisler,* 32 Ida. 520, 185 Pac. 845.) There is ample evidence to corroborate Rowe and Zitlau, if the latter be regarded as an accomplice, provided corroboration with reference to the identification of the exhibits was necessary, but such is not the law, as above pointed out.

Appellant's third assignment of error has reference to the refusal of the court to give his requested instruction number 4, quoted as follows:

"You are instructed that Emil Zitlau, is, as a matter of law, an accomplice."

We have read the voluminous record carefully to determine just what testimony was introduced which did in any manner connect Zitlau with the crime, as an accomplice. It would serve no useful purpose to set forth any or all of the testimony from which the inference could be drawn that he was an accomplice. Suffice it to say that the evidence is not clear or convincing. In fact, to our minds it is very doubtful if he was such. In that regard we are no different than the appellant and his attorneys themselves. In appellant's brief we find the following statement:

"We were not sure whether or not Zitlau was an accomplice, but we believed he was, and because we were not certain that he was an accomplice we asked the court to charge the jury that he was an accomplice, as a matter of law, in a separate instruction."

Under such a state of facts it was proper for the court to submit the question as to whether or not Zitlau was an accomplice to the jury. In the case of *State v. Grant*, 26 Ida. 189, 140 Pac. 959, this court held that when the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury touching the law of accomplices and leave the question, of whether or not the witness is an accomplice, to the jury as a matter of fact, unless it appears without substantial conflict in the testimony that such witness was an accomplice. Appellant and his attorneys conceding that they were in doubt as to whether or not Zitlau was an accomplice, it necessarily follows that the court may, too, have been in doubt and therefore properly submitted the question to the jury under proper instructions. Appellant practically concedes that such was the proper thing to do when his attorney states in his brief, as follows: "If there is any doubt about the accomplicity of Zitlau, that question of fact could have been submitted to the jury."

Appellant contends under assignment of error number 4, that the court erred in not giving appellant's requested instruction number 5, which is as follows:

"You are instructed that before you can convict the defendant the corroborating evidence, if any there be, must do more than raise a grave suspicion of defendant's guilt."

There is no merit in said assignment. The law as to the particular subject was thoroughly covered by instructions numbers 12, 13 and 14, where the law as to the corroboration required was fully and correctly stated.

Assignments of error numbers 5 and 6 may be properly considered together. Assignment number 5 is that the court erred in not giving appellant's requested instruction number 6, as follows:

"You are instructed that Ed. Casey, Theo Casey, Jack Casey, Hyrum Bush and Bert Rowe are, as a matter of law, accomplices."

Each of the parties being accomplices, assignment number 6 is to the effect that the court erred in leaving the question to the jury of determining whether Ed Casey, Theo Casey, Jack Casey, Hyrum Bush and Bert Rowe were accomplices. That Ed Casey, Theo Casey, Jack Casey, Hyrum Bush and Bert Rowe were accomplices there is no doubt. Each testified regarding their participation in the crime, and the record discloses that each had pled guilty to the offense and had been sentenced by the court. The fact that each was an accomplice could not have been presented to the jury more convincingly than was done. It was admitted by all parties, and not questioned by anyone. Under such a state of facts the court should have instructed the jury that each of said parties mentioned was actually an accomplice as a matter of law. The sole question arises, Was the refusal of the court to so instruct the jury, prejudicial error? We think not. It seems certain that the jury could not have been misled on account of the failure to give such instruction. Each of the parties named, against whom the instruction was directed, testified positively that he was a party to the crime, relating in full detail his connection with the same; that each had been charged with the commission of the offense, entered his plea of guilty and served his term in the penitentiary as a punishment

therefor. In instruction number 11 the court fully and carefully defined who constitutes an accomplice. The instruction reads, as follows:

"An accomplice is a person concerned in the commission of a crime, whether he directly participates in the commission of the act constituting the offense or aids and abets in its commission, or, not being present, has advised or encouraged its commission."

In instructions numbers 12, 13 and 14, herein fully set forth, the court carefully set out the law as to the requirements before conviction can be had regarding corroboration. It necessarily follows that the jury, it being fully admitted and not controverted that the men named in the instruction requested were accomplices, followed the instructions actually given by the court and considered the parties named as accomplices; and also followed the law, as given by the instruction, with reference to corroboration before finding the appellant guilty. It is the law that under such a state of facts, while the refusal to give such a requested instruction is erroneous, it is not prejudicial In the case of *People v. McDermott,* 75 Cal. App. 718, 243 Pac. 485, we find the following:

"The uncontradicted evidence shows that the people's witness, Sova, was the principal actor in the robbery of French and Kellogg, and that if the accused participated in it as testified by Sova, the latter was an accomplice in the crime. In fact, it was admitted both by the people and by the defense, and the testimony of every witness, including Sova himself established, to the point of demonstration, that he robbed the bank, was caught with the money in his possession, and at once confessed. When the question as to whether or not a witness is an accomplice, under the evidence, is not disputed, it is one of law for the trial court, and it is its duty so to instruct the jury. *People v. Howell,* 69 Cal. App. 239, 230 Pac. 991. In *People v. Coffey,* 161 Cal. 433, 436, 119 Pac. 901, 902, 39 L. R. A., N. S., 704, the Supreme Court said:

" 'Whenever the facts themselves are in dispute, that is to say, whenever the question is whether the witness did or did not do certain things, which, admittedly, if he did do them, make him an accomplice, the jury's finding, upon familiar principles, is not disturbed. But where the facts are not in dispute, where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice.'

"And so in the instant case the jury should have been instructed that Sova must be regarded as an accomplice. That question should not have been left to it to determine. However, it must be presumed that the jurors observed and applied the instructions given them. In other instructions the definition of an accomplice was correctly stated, as also was the rule that the defendant may not be convicted on the uncorroborated testimony of an accomplice, and that the corroborating evidence is not sufficient if it merely shows the commission of the crime and circumstances thereof; and further, that such corroborating evidence must tend to connect the defendant with the commission of the crime. Hence it is inconceivable that the erroneous instruction given in any way prejudiced any right of the appellant."

To the same effect: *People v. Ferlin,* 203 Cal. 587, 265 Pac. 230; *People v. Knoth,* 111 Cal. App. 250, 295 Pac. 577.

■ ■ Assignment number 7 is to the effect that the evidence is insufficient, as a matter of law, to justify a verdict against appellant, for the reason that there is no corroboration whatever. Under our statute, heretofore quoted, the corroborating testimony need only tend to connect the defendant with the crime. (*State v. Orr, supra; State v. Knudtson, supra; State v. Gillum, supra.*) In the case of *State v. Gillum,* this court held as follows:

"Where the circumstances point to the guilt of the accused, independent of the accomplice's testimony, such circumstantial evidence may be a sufficient corroboration of the accomplice's testimony to sustain a conviction. It is

not necessary that the testimony of an accomplice be corroborated in every detail. Any corroborative evidence legitimately tending to connect the defendant with the commission of a crime may be sufficient to warrant a conviction, although standing by itself it would not be sufficient proof of defendant's guilt."

In the case of *People v. Nikolich*, 93 Cal. App. 356, 269 Pac. 721, the court held, as follows:

"The law is well settled that the testimony of the accomplice need not be corroborated by direct evidence. The entire conduct of the defendant may be looked to for the corroborating circumstances, and, if from those circumstances the connection of the accused with the crime may fairly be inferred, the corroboration is sufficient."

In the case of *People v. McLean, supra,* the court used the following language:

"Although more is required by way of corroboration than to raise a mere suspicion . . . . yet the corroborating evidence is sufficient if it of itself tends to connect the defendant with the commission of the offense, although it is slight, and entitled, when standing by itself, to but little consideration."

Statements and actions of a defendant after his arrest, testified to by witnesses, may constitute sufficient corroboration to satisfy the requirements of the statute. (*State v. Sims*, 35 Ida. 505, 206 Pac. 1045; *State v. Whisler, supra; State v. Knudtson, supra; State v. Myers*, 36 Ida. 396, 211 Pac. 440; *State v. Orr, supra.*) In view of the law thus stated we hold the evidence amply sufficient to sustain the conviction.

The evidence discloses that appellant met Bert Rowe, one of the accomplices, on the afternoon of January 27, 1932, the day the first attempt was made to burn the Riverside Gardens, at which time, and in the presence of Emil Zitlau, appellant requested to see Rowe alone. Rowe and appellant then went to Zitlau's automobile, where appellant claims he went for the purpose of requesting Rowe to repay him $10 which appellant had loaned him, and to request him not

to pay any further attentions to his daughter, who he said had made complaint to him. On the other hand it was contended by Rowe that at such interview appellant employed him, for a consideration of $250, to burn the Riverside Gardens; that nothing was said or mentioned either about a $10 loan, or any attention Rowe might have paid to appellant's daughter.

Mrs. Reed Bills, the daughter of appellant in question, denied that she ever made any complaint as to attentions paid her by Rowe, to appellant, her father; that the only complaint she ever made was to her mother, with whom she was living and who was no longer living with appellant, but was remarried and living at another place.

Rowe also testified that while in Zitlau's automobile, appellant gave him $3 with which to purchase gasoline for the purpose of burning the Riverside Gardens, and at the same time appellant requested Rowe to go to the Jungle Dance Hall and procure two five-gallon cans of gasoline; that the party in charge would give the two cans to Rowe if he would ask for "floor dressing" belonging to one George Rainey.

It appears from the testimony of Emil Zitlau that on the same day he drove Rowe to the Jungle Dance Hall; that they were accompanied by Rowe's father and sister-in-law; that Earl Brown, son of appellant, who was at the Jungle Dance Hall, was asked for the two cans of floor dressing, and that two five-gallon cans filled with some sort of liquid substance were delivered; that the same were placed in gunny sacks and put in the automobile; that one of the cans found at the scene of the crime was similar, if not identical, to the one that was taken from the Jungle Dance Hall by Zitlau and Rowe. The other can found at the scene of the crime was similar or identical to the one filled with gasoline by the witness, Founds, at the request of Rowe. Founds, at the same time, saw what appeared to be another five-gallon can, with gunny sacks and other paraphernalia similar, if not identical, to those found at the scene of the crime.

Appellant, after arrest and upon being released on bail, went to see George Rainey, almost immediately, for the purpose of persuading Rainey to testify, for him, that the floor dressing in question belonged to Rainey. At that time he offered Rainey $50 if he would so testify. At a later date appellant met Rainey in Rexburg, Idaho, and he offered, in the presence of the witness Ephraim Merrill, to double the amount if he would testify that appellant had given him the floor oil. At the same time he told Rainey that if he would not so testify it was "just curtains for me," and further stated, "it is the only link in the chain I haven't got welded to make a perfect alibi for me." At the same conversation Merrill asked appellant if anyone was present with appellant and Mr. Rowe in the car when they had the conversation at Rigby, and appellant answered: "No, that's where I used a little common sense." Again, after the preliminary hearing, appellant called at Rainey's home and according to the testimony of Rainey offered him $500 if he would testify that appellant had given him the floor oil, to make an alibi for him. Rainey contends that in all of these conversations, where appellant offered to pay him money to so testify, that he steadfastly told appellant that he would not do so, as he had never purchased or received any floor oil or dressing from appellant, or ever talked with appellant regarding floor oil or dressing prior to the crime.

That appellant would offer these sums of money to Rainey so that he would testify to the truth, and as appellant contends he wanted him to, seems almost unbelievable. The evidence also discloses that the appellant was manager and had a substantial financial interest in the Jungle Dance Hall, which was competing with the Riverside Gardens, and that such competition materially affected the revenue of the Jungle Dance Hall; that the destruction of the Riverside Gardens, consequently, would substantially inure to the benefit of appellant.

The evidence of these disinterested parties, as to the acts, conduct and statements made by appellant with reference to the crime, were amply sufficient to meet the

requirement of the statute pertaining to corroboration necessary of an accomplice to justify conviction. (*State v. Ettenberg*, 145 Minn. 39, 176 N. W. 171; *State v. Keith*, 47 Minn. 559, 50 N. W. 691; *Crowell v. State*, 79 Neb. 784, 113 N. W. 262.) The jury is always the sole judge as to the facts, and as to the credibility of the witnesses. They had the opportunity to listen to the testimony of each of the witnesses, to observe the demeanor of the various witnesses on the stand, and the motive or interest that may have prompted the testimony. It was for the jury to say who they believed or disbelieved. The jury having found the appellant guilty, and the evidence being sufficient to support the verdict, we feel that the same should not be disturbed.

As to appellant's assignment of error number 8, the question raised has been thoroughly covered and disposed of in our consideration of appellant's assignment number 3.

Lastly, appellant complains that the court erred in permitting the prosecuting attorney to cross-examine Allen Marler and H. J. Nelson, character witnesses of appellant, as to their knowledge of a judgment in the probate court of Jefferson county, in which judgment appellant had pleaded guilty to the crime of contributing to the delinquency of a minor. It seems to be the well-established law that where a witness is called to testify as to the good reputation of the defendant, such witness may be cross-examined as to whether he has heard rumors of specific charges of the commission of acts inconsistent with the character he is called upon to prove. Not to establish the truth of such reports, but primarily to test the credibility of the witness and the weight of his evidence. Such cross-examination may go to any matter inconsistent with reputation, and the cross-examination of such witnesses may take a wide scope. In the case of *State v. Ward*, 51 Ida. 68, 1 Pac. (2d) 620, this court held:

"On cross-examination by counsel for appellant of some of the state's character witnesses, they were asked if they had not heard of the deceased's participation in a robbery by force, and other similar actions. The state's objection

was sustained. Such questioning was proper and it was error not to allow such cross-examination.''

See, also, *People v. Garcia,* 127 Cal. xviii, 59 Pac. 576; *People v. Simons,* 70 Cal. App. 143, 232 Pac. 772; *People v. Cohen,* 113 Cal. App. 260, 298 Pac. 114; *Brindisi v. People,* 76 Colo: 244, 230 Pac. 797; *State v. Presta,* 108 Wash. 256, 183 Pac. 112. The latter case being cited by appellant in support of his contention, but a careful analysis shows that the court clearly upholds the general doctrine as above stated.

Appellant makes some complaint in his brief, without citing any particular assignment of error, regarding the ruling of the trial court with reference to the admissibility of some of the evidence testified to by accomplices, by which ruling the court permitted the various accomplices, including the witness Emil Zitlau, to connect appellant with the perpetration of the offense through the declarations of Bert Rowe. We find that the court was correct in the admission of this testimony, and did not commit any error in so doing. In *State v. Anderson,* 165 Wash. 437, 5 Pac. (2d) 994, the court, under a state of facts quite similar to the ones at bar, said:

''Appellant was charged as an accessory before the fact. It was the theory of the state, fully supported by the evidence that appellant conceived the idea and planned the crime, that he hired Morgan to carry the plan into execution, promising to pay him $300, and that Morgan, for a lesser sum, hired the third defendant to do the work which had been assigned to him. Under these conditions, in order to convict the appellant, it was necessary for the state to prove the guilt of both of the other defendants. Evidence offered of things done and said by the other defendants in the absence of the appellant was objected to, and the overruling of those objections is assigned as error. But by our previous holdings it is well stated that, under these conditions, any evidence competent to prove the guilt of the other defendants if they had been on trial alone was also competent against the appellant.''

Other cases holding to the same effect are: *State v. Mann,* 39 Wash. 144, 81 Pac. 561; *State v. Vane,* 105 Wash. 421, 178 Pac. 456; *State v. Lyda,* 129 Wash. 298, 225 Pac. 55.

We find that the appellant had a fair and impartial trial, and that the trial court did not commit any prejudicial error. Ultimately it was a question for the jury to decide as to appellant's guilt, and the jury having found the appellant guilty, the judgment is affirmed.

Budge, C. J., and Givens, J., concur.

MORGAN, J., Dissenting.—The statement of facts contained in the foregoing opinion, connecting appellant with the commission of the crime of which he was convicted, is supported by the testimony of Bert Rowe, a witness for the state, who pleaded guilty to, and was adjudged convicted of, that crime. Rowe is further discredited by a statement contradicting his evidence in material particulars which he admitted he made prior to the trial; also by the testimony of witnesses to the effect that his general reputation for truth, honesty and integrity in the community in which he resided was bad. No witness was offered on behalf of the state to testify to the contrary.

The serious question in this case is as to the effect of the refusal to give certain instructions requested by appellant, touching the corroboration of an accomplice. Rowe testified appellant hired him to burn the dance hall known as Riverside Gardens. At the trial some cans, sacks and a rug were introduced in evidence which were shown to have been found near the dance hall shortly after the attempt to burn it was made. No witness, other than Rowe, testified to anything tending to connect appellant with these exhibits. Emil Zitlau, a witness by whom it was sought to identify them, and whose testimony is relied on to support the majority opinion, was unable to do so. On direct examination he testified as follows:

"I don't know whether they are the cans I seen. There was two cans; two square five-gallon cans taken out of the back room by Bert and Earl Brown.

592

"Mr. Bandel: (To witness.) Did they look like the cans marked Exhibits '1' and '3'?

"Witness: I have no particular marks; that is about all I know; they were square five-gallon cans like these.

. . . . . . . . . . . . .

"Q. Referring particularly to plaintiff's Exhibit '1' of which the sack is a part, do you recognize this sack as being the sack in which the can was placed at that time and place?

"Mr. Miller: We object to that as leading, your Honor.

"Mr. Bandel: (To witness.) Do you recognize the sack, at all?

"Witness: No."

On cross-examination he testified:

"Q. You don't know whether Exhibits '1' and '3' are the same cans, or not?

"A. I couldn't be certain; no.

"Q. As I understand your testimony, you merely know that it was two square five-gallon cans?

"A. Yes, sir.

. . . . . . . . . . . . .

"Q. Now, then, you don't know whether either one of these two Exhibits are the ones that was taken out of the dance hall (referring to the dance hall managed by appellant) or whether this (Indicating Exhibit '2') might have been one?

"A. I don't know.

"Q. And don't profess to know?

"A. No, sir."

Because of lack of evidence, other than that of the accomplice Rowe, connecting appellant in any way with the exhibits, the refusal to give requested instruction numbered 3, quoted in the foregoing opinion, was error.

As pointed out in the opinion, the judge refused to instruct the jury, at appellant's request, that, as a matter of law, Emil Zitlau was an accomplice. The majority of the court justifies the refusal to so instruct on the theory that the evidence was not clear and convincing that the witness

was an accomplice and, therefore, it was proper to leave the question of whether he was or not to the jury. It is stated in the opinion, in effect, that whether a witness is an accomplice or not is a question of fact for the jury unless it appears, without substantial conflict in the testimony, that he is an accomplice, in which event, of course, it becomes a question of law for the court.

Nevertheless, the majority holds it was not prejudicial error for the judge to refuse to instruct the jury "that Ed Casey, Theo Casey, Jack Casey, Hyrum Bush and Bert Rowe are, as a matter of law, accomplices," and seeks to justify so holding on the theory that the evidence shows conclusively these men were accomplices and, therefore, appellant could not have been prejudiced by the error committed in refusing to give the requested instruction.

Only when the evidence clearly establishes that fact does it become the duty of the judge, when properly requested, to instruct that a witness is an accomplice. When that fact clearly appears, as it did in this case with respect to Rowe, Bush and the three Caseys, the court owes the defendant a duty to name the witnesses who are accomplices, in instructing the jury, in order to protect him against the recognized likelihood of being wrongfully convicted on the uncorroborated testimony of an accomplice, or on the testimony of an accomplice corroborated only by the testimony of another accomplice.

We cannot say the jury did not consider the testimony of Bush and the Caseys as corroborative of that of Rowe. Rowe testified Brown hired him to burn the building, and Bush and the Caseys testified Rowe hired them to help commit the crime, and told them Brown was to furnish the money to pay for doing so. None of them, other than Rowe, testified to having had any conversation with Brown looking to the commission of the crime, nor does it appear Brown knew of the complicity of Bush or either of the Caseys in its attempted commission. Under these circumstances it is probable the jury looked upon Rowe as the accomplice of Brown and considered the testimony of Bush and the

Caseys as corroborative of the testimony of Rowe. The instruction, requested and refused, would have prevented this.

The failure of the court to give an instruction, when properly requested, which would point out who were accomplices within the meaning of the law requiring such witnesses to be corroborated and prohibiting their corroboration by the testimony of each other, was prejudicial error. In *Cudjoe v. State,* 12 Okl. Cr. 246, 154 Pac. 500, L. R. A. 1916F, 1251, the criminal court of appeals of Oklahoma stated the rule, applicable here, as follows:

"When the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury on the law of accomplice testimony and leave the question as to whether or not the witness is an accomplice for the determination of the jury as a question of fact. But where the facts are not in dispute, or where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice. Where he is admitted to be such, or where the undisputed facts show him to be an accomplice, the court may so charge without invading the rule that the court should not comment on the credibility of any witness. (Authorities cited.)

"If two or more accomplices testify, the same corroboration is required as if there be but one; an accomplice can neither corroborate himself nor another accomplice."

See, also, *State v. Carr,* 28 Or. 389, 42 Pac. 215; *People v. Schumann-Heink,* 98 Cal. App. 225, 276 Pac. 625; *People v. Allison,* 200 Cal. 404, 253 Pac. 318; *Winfield v. State,* 44 Tex. Cr. 475, 72 S. W. 182.

Because of the refusal to give the requested instructions, above discussed, the judgment should be reversed and a new trial granted.

HOLDEN, J., Dissenting.—In harmony with the views expressed in my dissenting opinion in *State v. Orr, ante,* p. 452, 24 Pac. (2d) 685, to the effect that a defendant has a right to have the jury trying him correctly instructed as

to the law of his case, and it clearly appearing from the record in the case at bar, that Rowe, Bush and the Caseys were accomplices, then Brown had a right to have the jury trying him so instructed, and it was error for the court to refuse to do so, particularly in view of the fact, as stated by Justice Morgan, the jury may have considered that the Bush and Casey testimony corroborated Rowe, and, consequently, I concur in the dissenting opinion of Justice Morgan.