438 P.2d 897

**STATE of Idaho, Plaintiff-Respondent,**
v.
**Ramon GONZALES, Jr., alias Raymond
Gonzales, Defendant-Appellant.**

**No. 10054.**

Supreme Court of Idaho.

March 25, 1968.

Rehearing Denied April 16, 1968.

Richard R. Black, Pocatello, for appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Thomas E. Moss, Pros. Atty., Blackfoot, for appellee.

TAYLOR, Justice.

Defendant (appellant) Ramon Gonzales, Jr., and some friends were visiting and drinking at the Silver Spur bar in Blackfoot, Idaho, late on the evening of November 19, 1966. Likewise, at the same time decedent Adonis "Speedy" Gonzales (not related to defendant) and his companions constituted another group in the same bar. All participants—except the state's principal witness John Garcia, a teetotaler—imbibed substantial quantities of alcoholic beverages. An altercation arose between Garcia and the decedent. This was resolved, however, without physical combat. Thereafter, Garcia, Robert Perez, and defendant left the bar. They were followed outside by decedent, where another argument ensued. Garcia and defendant each threw a bottle at the decedent. Defendant's missile struck the head of decedent, and decedent returned into the bar. Fearful that decedent would bring out his companions to continue the fracas, Perez entered and waited in a friend's car. Defendant and Garcia ran to defendant's car, a red-and-white Buick, parked nearby. In this car they drove to defendant's apartment where, according to Garcia, defendant obtained a .22 caliber rifle equipped with telescopic sight. They then returned to the automobile and drove back to the Silver

Spur bar, defendant driving and Garcia occupying the right-hand front seat. Near the bar they stopped at a traffic light from which point they could see a group congregated outside the bar. About the time the light turned green, defendant stated to Garcia, "I am going to shoot," and then said, either, "I am going to kill him," or "but I am not going to kill him." Defendant then drove the car slowly forward, picked up the rifle from the floor of the car, stuck it through the open left-hand front window, fired one shot, and drove off at a high rate of speed.

The foregoing relation of events occurring from the time Garcia and defendant left the bar in defendant's car, up to the time of the shooting, is based upon the testimony of Garcia, the only witness thereto.

The bullet struck decedent, who fell and expired almost immediately. The medical testimony established that the bullet passed through decedent from right to left, piercing the right arm, lungs and heart, and came to rest beneath the skin on the left side in the anterior axillary fold.

Numerous witnesses in the area heard the shot fired, saw the shot fired from a gun protruding from the car window, recognized the car, saw the victim fall immediately after the shot, and saw the car drive off rapidly. These witnesses, however, did not identify the defendant as the one who fired the rifle. Garcia was the only witness who did so.

After the shooting defendant and Garcia drove to the home of defendant's mother in Aberdeen, Idaho. The .22 rifle and scope were left in the mother's house and another larger caliber rifle was placed in the car. The only evidence of what occurred at the mother's house came from the testimony of Garcia. Neither defendant nor his mother testified.

Defendant and Garcia left the mother's home and, again traveling in defendant's car, stopped at American Falls and Pocatello before returning to Blackfoot. Garcia testified that during this trip defendant said, "The poor guy, if I shot him right, I hope he doesn't die."

On November 20th, in the course of police investigation, a police officer accosted defendant at a drive-in service area in Blackfoot and asked if defendant owned a .22 rifle. Defendant denied such ownership and the officer left without further questioning. On November 21st a complaint was filed charging defendant with disturbing the peace. Defendant was arrested upon a warrant issued thereon. The arrest occurred in defendant's apartment in Blackfoot. The arresting officer testified that after warning defendant of his "Miranda" rights, he asked defendant for permission to look around the apartment. Permission was given and in the course of the search a spent .22 caliber cartridge case was discovered and seized by the officer. On his arraignment in the probate court on the charge of disturbing the peace, defendant was again advised of his rights and warned that he was under suspicion for the shooting of decedent. Defendant indicated that he desired the assistance of counsel. However, no counsel was then provided.

Immediately after the arraignment and during the course of defendant's booking at the sheriff's office, at which time only the defendant and officer Adams were present, the defendant allegedly asked the officer, "How is the fellow I shot, is he ded (sic) or what?" When this statement was offered through the officer as a witness, defense counsel objected and offered to show, through the testimony of defendant outside the hearing of the jury, that the statement attributed to him was not voluntary but was elicited in the course of custodial interrogation. The trial court declined to hear the offered proof and permitted the officer to testify to the statement, and also that he was not interrogating defendant at the time and that the statement was made by defendant spontaneously and not in response to any statement made, or question put, to him.

After the arrest officers Wood of Blackfoot and Vargeson of the Aberdeen police went to the home of defendant's mother in Aberdeen. Wood testified that he had a search warrant, but did not present it to Mrs. Gonzales. Rather, officer Vargeson, who had known the Gonzales family for a number of years, asked her permission to look for a rifle which defendant may have left in the house. Mrs. Gonzales consented and assisted officer Vargeson in searching for the rifle. Officer Wood remained outside. The .22 rifle and scope were found in the house and seized.

Maurice J. Stack, Jr., a ballistics expert from the F.B.I., testified that he had examined the .22 rifle (State's Exh. L., found in the home of Mrs. Gonzales), the bullet (State's Exh. H., taken from the body of decedent), and the empty .22 cartridge case (State's Exh. N., found in defendant's apartment). The witness identified the bullet as a .22 Long Rifle Remington-Peters bullet, and the cartridge case as the type into which such a bullet normally would be loaded; that the bullet could have been fired from the .22 rifle (Exh. L.), but he could not exclude the possibility that it may have been fired from some other gun; the cartridge case (Exh. N.) had definitely been fired in the rifle (Exh. L.) to the exclusion of any other gun.

The jury found defendant guilty of murder in the first degree and a sentence of life imprisonment was imposed by the judgment of the court, from which defendant prosecuted this appeal.

The refusal of the court to give to the jury defendant's requested instruction No. 17[1] is assigned as error. Defendant contends that the witness Garcia was an accomplice in the killing of "Speedy" Gonzales and that the jury should have been in-

structed as to the corroboration necessary to sustain a conviction based upon the testimony of an accomplice.

" 'An "accomplice" is a person concerned in the commission of a crime, whether he directly participates in the commission of the act constituting the offense or aids and abets in its commission, or, not being present, has advised or encouraged its commission.' " State v. Gilbert, 65 Idaho 210, at 215, 142 P.2d 584, at 585 (1943).

See State v. Grimmett, 33 Idaho 203, 193 P. 380 (1920) ; State v. Brown, 53 Idaho 576, 26 P.2d 131 (1933).

" 'An "accomplice" is a responsible person whose wilful participation in the commission of a crime, when that fact is established by competent evidence in a court of requisite jurisdiction, renders him liable to a conviction of the offense.' " State v. Grimmett, 33 Idaho 203, at 212, 193 P. 380, at 382 (1920).

"Mere presence at, acquiescence in, or silent consent to the commission of an offense is not, in the absence of a duty to act, legally sufficient, however reprehensible it may be, to constitute one a principal, an accessory, an aider and abettor, or an accomplice. An accomplice is one who is joined or united with another; one of several concerned in a felony; an associate in a crime; one who co-operates, aids, or assists in committing it." State v. Altwatter, 29 Idaho 107, at 111, 157 P. 256, at 257 (1916).

" * * * a mere mental state of uncommunicated consent or acquiescence on the part of a bystander, where a crime is being instigated, is not sufficient to make him an accomplice in its commission. Some aiding, abetting or actual en-

---

1. You are instructed that Idaho Code 19–2117 provides as follows:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commis-

sion of the offense; and the corroboration is not sufficient, it if (sic) merely shows the commission of the offense, or the circumstances thereof."

In other words, there must be sufficient evidence, which in itself would convict the defendant without the aid of the testimony of John Garcia.

couragement on his part is essential." State v. Grant, 26 Idaho 189, at 197, 140 P. 959, at 962 (1914).

An accomplice is one of several "principals" to a criminal undertaking as defined by statute. I.C. § 18–204.[2]

Our statute, I.C. § 19–2117 requires that the testimony of an accomplice be corroborated in order to sustain conviction based thereon.

■ The evidence tends to indicate that Garcia had had an altercation with decedent prior to the shooting; that he knew defendant took a rifle from his apartment and placed it in the automobile; that he accompanied defendant in the automobile back to the scene of the shooting; and that he was aware defendant was carrying the rifle for an unlawful purpose. While it cannot be said as a matter of law that Garcia was an accomplice in the homicide, the jury may have found that by his conduct he aided, abetted or encouraged its commission. Thus, there was presented an issue of fact as to whether Garcia was an accomplice. It then became the duty of the court to instruct the jury on the law as to accomplices in such manner as to submit to the jury for its determination the issue as to whether Garcia was an accomplice, and also to inform the jurors that if they found that Garcia was an accomplice then his testimony must be corroborated by other evidence as required by the statute in order to sustain a conviction based thereon. State v. Brown, 53 Idaho 576, 26 P.2d 131 (1933); State v. Grant, 26 Idaho 189, 140 P. 959 (1914).

■ The last sentence of defendant's requested instruction No. 17, to wit: "there must be sufficient evidence, which in itself would convict the defendant without the aid of the testimony of John Garcia" was not a correct statement of the law. State v. Bassett, 86 Idaho 277, 385 P.2d 246 (1963); State v. Mundell, 66 Idaho 339, 158 P.2d 799 (1945); State v. Gilbert, 65 Idaho 210, 142 P.2d 584 (1943); State v. Brown, 53 Idaho 576, 26 P.2d 131 (1933); State v. Orr, 53 Idaho 452, 24 P.2d 679 (1933); State v. Gillum, 39 Idaho 457, 228 P. 334 (1924); State v. Smith, 30 Idaho 337, 164 P. 519 (1917). The request was properly refused. Nevertheless the court had a duty to instruct the jury on all matters of law necessary for their information, I.C. § 19–2132, and the defendant was entitled to have his theory of the case submitted to the jury upon *proper* instructions. State v. McGlochlin, 85 Idaho 459, 381 P.2d 435 (1963); State v. Cox, 82 Idaho 150, 351 P.2d 472 (1960); State v. White, 46 Idaho 124, 266 P. 415 (1928). Also the character and degree of corroboration required should have been given. See State v. Bassett, supra; State v. Brown, supra; State v. McCandless, 70 Idaho 468, 222 P.2d 156 (1950).

The failure of the court to instruct the jury on the law of accomplice requires a reversal of the judgment.

■ Defendant also contends that officer Adams should not have been permitted to testify to the statement which the officer attributed to the defendant, to wit: "How is the fellow I shot, is he ded (sic) or what?" Defendant contends the statement was made by him in response to interrogation in violation of his right to remain silent as vouchsafed to him by the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). The record shows that minutes before the statement was made, defendant had been advised of his

2. "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics, or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or coercion, compel another to commit any crime, are principals in any crime so committed."

rights and warned that any statements made by him might be used against him. The statement being in the form of a question, does not appear to have been made in response to interrogation. However, the record is not conclusive that the statement was entirely voluntary, or that the defendant intended to waive his right to remain silent. The court, therefore should have excused the jury and in its absence tried the issue of voluntariness before permitting the officer to testify to it. If, upon such hearing, the court found that the statement was not voluntarily made, or if the court remained uncertain as to its voluntariness, then the objection should have been sustained and the statement excluded. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). Upon a retrial the procedure herein outlined should be followed.

██ Defendant further contends that State's Exhs. L., M., and N.—the rifle, scope and spent cartridge case—were the fruits of unreasonable searches and seizures and should not have been admitted in evidence, citing U.S.Const. amends. IV and XIV; Idaho Const., art. 1, §§ 13 and 17. Defendant also urges that the testimony of the ballistics expert, based upon such exhibits, should have been excluded. We disagree. The cartridge case was discovered in a search of defendant's apartment made in connection with, and incident to, a lawful arrest. Defendant contends that his consent to the search was involuntary, but, whether or not consent was voluntarily given, the exhibit was discovered as the result of a lawful search incident to the arrest, and was properly admitted. See United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); State v. Polson, 81 Idaho 147, 339 P.2d 510 (1959); State v. Parker, 81 Idaho 51, 336 P.2d 318 (1959); State v. Hart, 66 Idaho 217, 157 P.2d 72 (1945); State v. Conner, 59 Idaho 695, 89 P.2d 197 (1939). It matters not whether the property seized be an instrumentality of the crime

or "mere evidence." Warden Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

The seizure of the gun and scope resulted from a search of defendant's mother's home, made with the consent and assistance of the mother. The evidence indicates that defendant did not reside in the home in Aberdeen, but resided in an apartment in Blackfoot. Further, the defendant was not present at the home of his mother at the time of the search. Mrs. Gonzales was not called as a witness, and the testimony of the officers that she consented to, and assisted in, the search was undisputed.

██ The constitutional right to be secure from unreasonable search and seizure may be waived by voluntary consent to the search. Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946), reversed apparently on other grounds, 330 U.S. 800, 67 S.Ct. 857, 91 L.Ed. 1259 (1947); State v. Haggard, 89 Idaho 217, 404 P.2d 580 (1965). Generally the voluntary consent of the owner, or possessor, of the premises searched renders the search and seizure reasonable, even though it be another person who claims the constitutional protection. State v. Haggard, supra; State v. Polson, 81 Idaho 147, 339 P.2d 510 (1959); United States, ex rel. Puntari v. Maroney, 220 F.Supp. 801 (W.D. Pa., 1963); Maxwell v. Stephens, 229 F. Supp. 205 (E.D.Ark., 1964), aff'd 348 F.2d 325 (8th Cir., 1965), cert. den. 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965), reh. den. 382 U.S. 1000, 86 S.Ct. 532, 15 L.Ed.2d 490 (1966); Commonwealth v. McKenna, 202 Pa.Super. 360, 195 A.2d 817 (1963). It has been said that submission to the apparent authority of a police officer is not a voluntary consent or waiver. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Cf. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921). Here, however, we have more than submission to authority. Not only did Mrs. Gonzales allow officer Vargeson to search her house, she actually participated in the search herself. This indicates that

consent to the search was freely and voluntarily given. McCray v. State, 236 Md. 9, 202 A.2d 320 (1964); State v. Kinderman, 271 Minn. 405, 136 N.W.2d 577 (1965), cert. den. 384 U.S. 909, 86 S.Ct. 1349, 16 L.Ed.2d 361 (1966). We conclude that the search was reasonable and that the articles seized in the course of the search were properly admitted in evidence. The testimony of the ballistics expert was also properly admitted.

■ Defendant assigns as error the refusal to give his requested instruction on motive.[3] It has been held that where there is no evidence of motive it is proper to instruct the jury that such circumstance is to be considered in favor of the accused. 41 C.J.S. Homicide § 359. In this case, however, there was evidence of motive. Hence, the request was properly refused. State v. Eisenstein, 72 Ariz. 320, 235 P.2d 1011 (1951).

■ Defendant requested instructions on intoxication, intent, and accident and misfortune, which were not given. The requests were fully covered by instructions given. Hence, no error was committed. State v. Oldham, No. 9970, March 4, 1968; State v. Koho, 91 Idaho 450, 423 P.2d 1004 (1967); State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965).

■ Defendant's request for an instruction defining "without due caution or circumspection" as used in the statute defining manslaughter, I.C. § 18-4006, was refused. While an instruction defining these terms would not have been improper, the terms are of common usage and are sufficiently generally understood, so that an instruction defining them was unnecessary. People v. Crossan, 87 Cal.App. 5, 261 P. 531 (1927) and cases therein cited.

■ Defendant urges that the jury should not have been permitted to consider the charge of murder in the first degree or second degree "since as a matter of law no proof of malice aforethought, premeditation, deliberation or intent to kill was proved." On the contrary, the facts as we have outlined them herein from the evidence are sufficient to establish all of these elements of the charge. Defendant argues that the instructions failed to distinguish between first and second degree murder. Instruction No. 8 defined murder and malice aforethought substantially in the language of I.C. §§ 18-4001 and 18-4002. Instruction No. 12 defined the degrees of murder in the language of I.C. § 18-4003. Instruction No. 11 defined the terms "willful, deliberate and premeditated" as essential to murder of the first degree. Instruction No. 14 further defined "feloniously," "willfully," "premeditatedly," "deliberately" and "malice aforethought." These instructions were proper and sufficient. State v. Anstine, 91 Idaho 169, 418 P.2d 210 (1966); State v. Brooks, 49 Idaho 404, 409, 288 P. 894 (1930).

We have discussed all of the assignments of error necessary to this decision and pertinent to issues which may arise upon retrial of the cause. I.C. § 1-205.

The judgment is reversed and the cause is remanded with instructions to the trial court to grant a new trial.

McQUADE, McFADDEN and SPEAR, JJ., and YOUNG, D. J., concur.

3. You are instructed that the evidence has failed to show any motive on the part of the Defendant to shoot the decedent and that such want of motive is a circumstance, which must be considered by you in favor of the innocence of the Defendant.