457 P.2d 433

**STATE of Idaho, Plaintiff-Respondent,**
**v.**
**Robert WILSON, Defendant-Appellant.**
**No. 10164.**

Supreme Court of Idaho.

July 23, 1969.

Kerr & Williams, Blackfoot, for appellant.

Robert M. Robson, Atty. Gen. and Gale M. Merrick, Asst. Atty. Gen., Boise, and Thomas E. Moss, Pros. Atty., Blackfoot, for appellee.

DONALDSON, Justice.

Defendant (appellant) Robert Wilson was convicted and adjudged guilty of the

crime of rape.[1] He was sentenced to fifteen years in the Idaho State Penitentiary. He has appealed from the conviction and judgment to the Supreme Court of Idaho.

On the evening of June 15, 1967, Don Bingham, age 21, Arlen Genta, a high school student, and defendant, age 27, all were driving around the American Falls-Pocatello area, drinking beer and looking for girls. Near Chubbuck they observed the complaining witness, a sixteen year old girl, walking down the road. They stopped the car nearby and she ran over to it, evidently in the belief that it was her mother's automobile. According to the three men, they asked her if she wanted a lift; after some hesitation she accepted and entered the car. According to the complaining witness she was forced into the back seat of the car by Wilson. They drove to a dirt road near Fort Hall, the girl and Bingham in the back seat, the defendant Wilson driving, and Genta in the front passenger seat. The car was halted on the dirt road, Wilson and Genta left the vehicle, and Bingham attempted intercourse with the girl on the back seat of the car. She resisted his attentions, and there is some question whether Bingham was able to accomplish penetration, although he did have an ejaculation. After half an hour to forty-five minutes Bingham got out of the car and defendant entered.

According to the girl, Wilson at first tried to soothe her and help her to dress; after a few minutes, however, he too attempted intercourse with her, and despite her resistance, there was penetration.

The defendant Wilson contends that up until the time he returned to the car, he thought Bingham and the girl only had been "making out;" that when he learned that the girl had been sexually assaulted, he attempted to console her; and that he never tried to have sexual relations with her. A little while after Wilson entered the car, Genta and Bingham saw the lights of other vehicles, and returned to the car.

Both claimed that they observed Wilson on top of the girl in a coital position. Wilson's pants had been dropped sufficiently for his naked buttocks to be visible. Likewise the girl's shorts were pulled down. Bingham started the car, and Genta sat in the front seat. After they had driven a short distance, the complaining witness demanded that she be let out of the car. She was allowed to leave the car about a mile from Fort Hall. Unfortunately, thereafter a carload of inebriates happened to drive by the road where she had been let out of the car. Several of them raped her.

A medical examination made shortly after all of these incidents revealed that until the night in question the complaining witness had been virginal. The examination also showed that some person or persons had had forcible intercourse with her one or more times.

Appellant has listed thirty-six assignments of error. We shall limit our opinion to those issues meriting serious discussion.

Defendant strenuously objects to the admission in evidence of the following testimony, elicited by the prosecuting attorney from the physician who examined the complaining witness soon after she was raped.

"Q (By Mr. Moss) Doctor, I want to ask this question: In your experience as a physician—now, you have testified that this girl was definitely virginal prior to whatever it was that created her physical condition. Now, can you describe to the Jury just what your feeling is when—to a young girl at the time when her hymen is ruptured? How would this sensation be described?

A This, of course, I can only tell what is written in medical literature. It varies, of course, depending on whether we are talking about, say, a newlywed who on her wedding night is having her hymen ruptured through her initial first act of intercourse versus whether it is a forced rupture of the hymenal ring. In other words, this depends on the ease with which this is done.

1. I.C. §§ 18-6101, 18-6103, 18-6104.

MR. KERR: Just a moment, I think we are going to object to any testimony of this as speculative and again neither proving or disproving any evidence here of a prior—

THE COURT: I'll overrule the objection. Go ahead, Doctor.

Q (By Mr. Moss) Would you continue, Doctor?

A Yes, in a condition where there is a forced rupture of the hymenal ring there would be a sudden feeling of a possibility of a tearing sensation with an exquisite pain after which the girl would probably feel a warmth of the trickling of blood as it runs down and on each subsequent penetration of the penis you would have increased pain until the openings through the hymen were widened sufficiently to allow the penis to penetrate without touching the sides of the vaginal wall or the hymenal ring which had been broken and this would depend, sometimes up to a week after intercourse before they would have no pain whatsoever on subsequent intercourse.

Q And could you tell from your examination whether [the girl] at the time she was injured and in the way you have described was like this new bride that was prepared for intercourse or the other type of intercourse? Can you tell from your examination?

MR. KERR: We submit that this would be speculative.

THE COURT: I'll overrule the objection.

Q (By Mr. Moss) Could you tell, Doctor?

A Yes.

Q Do you have an opinion?

A Yes, a hymenal ring that is ruptured and is still bleeding after approximately six hours, is still bleeding from the torn edges of the hymenal ring and torn in at least three or four places has to have been brutally done to rupture the hymenal ring.

Q This would be opposed to the situation where the young lady is prepared like the marriage situation?

A Yes. Often times with an easy type of intercourse that one would hope would happen on the first night of intercourse in marriage, usually you do not get a bleeding, you get a gradual widening of the ring as one would dilate some article to a larger size without a tear in the hymen."

Legal evidence which logically tends to prove or disprove a material fact in issue is relevant and therefore admissible, provided it is not too remote or speculative or otherwise of such slight probative value as to justify the court in excluding it on the ground of immateriality. State v. Sandoval, 92 Idaho 853, 452 P.2d 350 (1969); State v. Cypher, 92 Idaho 159, 438 P.2d 904 (1968); State v. Farris, 48 Idaho 439, 282 P. 489 (1929).

" 'An accused in a criminal prosecution is entitled to a trial upon competent, relevant evidence; evidence which at least tends to establish his guilt or innocence; and evidence which has no such tendency, but which, if effective at all, could only serve to excite the minds and inflame the passions of the jury should not be admitted.' " State v. Fleming, 182 Neb. 249, 154 N.W.2d 65, at 66 (1967); accord, People v. Bernette, 30 Ill.2d 359, 197 N.E. 2d 436 (1964); People v. Tassiello, 300 N.Y. 425, 91 N.E.2d 872 (1950).

"A fundamental principle of criminal law is that where the offense charged 'is of itself sufficient to inflame the minds of the average person, it is required that there be rigorous insistence upon observance of the rules of the admission of evidence'." People v. Jones, 42 Cal.2d 219, 266 P.2d 38 (1954).

■ If allegedly inflammatory evidence is relevant and material to the proof of an issue of fact, the trial court may exercise a sound discretion in determining whether or not the probative value is outweighed by the possible prejudicial effect, and to admit

or exclude the evidence accordingly. In such a situation the court must balance the policy of protecting a defendant from undue prejudice, against the rule of logical relevance. People v. McCaughan, 49 Cal. 2d 409, 317 P.2d 974 (1957); see, State v. Martinez, 92 Idaho 183, 439 P.2d 691 (1968); People v. Love, 53 Cal.2d 843, 3 Cal.Rptr. 665, 350 P.2d 705 (1960); People v. Curtis, 232 Cal.App.2d 859, 43 Cal.Rptr. 286 (Dist.Ct.App.1965); Commonwealth v. D'Agostino, 344 Mass. 276, 182 N.E.2d 133 (1962); State v. Wall, 243 N.C. 238, 90 S.E.2d 383 (1955).

However, reception at trial of irrelevant and immaterial evidence, which serves no probative function, but serves only to inflame the minds and passions of the jury to the prejudice of the defendant is reversible error. State v. Whitney, 43 Idaho 745, 254 P. 525 (1927); State v. Wheeler, 70 Idaho 455, 220 P.2d 687 (1950); Landsdown v. United States, 348 F.2d 405 (5th Cir. 1965); United States v. Tomaiollo, 249 F.2d 683 (2d Cir. 1957); State v. Hudson, 89 Ariz. 103, 358 P.2d 332 (1960); Rand v. State, 232 Ark. 909, 341 S.W.2d 9 (1960); Hatfield v. Commonwealth, 395 S.W.2d 768 (Ky.1965); People v. Gougas, 410 Ill. 235, 102 N.E.2d 152, 28 A.L.R.2d 852 (1951).

Representative examples of irrelevant, immaterial and inflammatory material, the admission of which into evidence was held to be reversible error, include the following:

Evidence that defendant, accused of Mann Act Violation, failed to file income tax returns;[2] evidence that defendant, accused of murder, was a deserter from the army;[3] evidence that defendant, accused of arson, had been treated for venereal disease;[4] evidence that defendant, accused of murder, while in the army offered a friend $500.00 to shoot him in the foot in order to avoid frontline duty;[5] evidence, in prosecution for "Malicious shooting at and wounding another with intent to kill," of victim's prognosis for recovery and future ability to perform manual labor;[6] evidence, in rape prosecution, that victim was pregnant as a result of the rape;[7] evidence, in murder prosecution, that victim was married and a parent;[8] evidence that married defendant, accused of murdering wife's friend, had been seen with other women;[9] evidence from physician that defendant, accused of raping his seven year old daughter, might do the same thing in the future.[10]

We have stated before, concerning the crime of rape:

" * * * 'it is an accusation easy to make, and hard to be proved, and harder still to be defended by the party accused, though ever so innocent,' * * *.

"The crime charged is the most heinous known to the law. It seems a strange

2. Courtney v. United States, 390 F.2d 521 (9th Cir. 1968).

3. Powell v. Commonwealth, 308 Ky. 467, 214 S.W.2d 1002 (1948).

4. People v. Kilcullen, 281 App.Div. 760, 117 N.Y.S.2d 880 (1953).

5. People v. Wilson, 400 Ill. 461, 81 N.E. 2d 211 (1948).

6. Claypoole v. Commonwealth, 337 S.W. 2d 30, 87 A.L.R.2d 923 (Ky.1960).

7. People v. Crocker, 25 Ill.2d 52, 183 N.E. 2d 161 (1962). In this case defendant was accused only of raping A. At trial B testified that she was sitting in the back of the automobile in which defendant raped A. When defendant was finished with A, according to B, he climbed into the back and raped B. As

a result of the rape, B testified, she was now pregnant. In reversing the conviction and ordering a new trial the appellate court ruled that evidence of the rape of B was admissible as a part of the so-called *res gestae*, but that the evidence of B's pregnancy and defendant's imminent fatherhood was inadmissible.

8. The cases on this point are legion. See, e. g., Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962); Walker v. State, 239 Ark. 172, 388 S.W.2d 13 (1965); People v. Miller, 6 N.Y.2d 152, 188 N.Y.S.2d 534, 160 N.E.2d 74 (1959).

9. Acres v. Commonwealth, 259 S.W.2d 38 (Ky.1953).

10. Farris v. Commonwealth, 209 Va. 305, 163 S.E.2d 575 (1968).

**198**

thing to say, but our experience almost compels us to the belief, that, the more monstrous the crime charged, the more readily are juries inclined to give credence to it, and the less proof is required to establish it." State v. Baker, 6 Idaho ,496, at 498, 56 P. 81 (1899).

The matter testified to by the attending physician was highly inflammatory. The degree of pain suffered by a young virgin upon being raped, as opposed to the feelings of a bride when first experiencing intercourse with her husband, patently was not an issue to be decided by the jury in reaching its ultimate verdict. Testimony, highly speculative at best, concerning the pain suffered by the complaining witness might have a modicum of materiality and relevancy in a civil action for assault and battery, but it certainly has no place in a rape prosecution. The probative value of such evidence to the issues in the case was nil.

As we have indicated above, the mere accusation of rape by a sixteen year old virgin against a twenty-seven year old man has a tendency to place him in a poor light in the sight of the jury, despite the most careful instructions about the sin of prejudgment. The evidence that the alleged rape took place in conjunction with four or five other attacks the same evening on the same girl puts the defendant in an even less tenable position. The addition to these inflammatory charges of highly prejudicial, totally irrelevant, immaterial, and purely speculative testimony, comparing the discomfort involved in various methods of defloration, placed an intolerable burden on the defendant.

█ "The prosecutor is entitled to hit as hard as he can above, but not below, the belt." State v. Rollo, 221 Or. 428, 351 P.2d 422, at 426, 427 (1960). "Although it may be said that it is the duty of the prosecution to be vigilant in its efforts to obtain a conviction of a person accused of a heinous crime, it is our duty to see that each accused, irrespective of the nature of the crime of which he is charged, receives a fair and impartial trial." Acres v. Commonwealth, *supra*, 259 S.W.2d, at 40. The admission of the testimony under discussion deprived defendant of a fair and impartial trial. For that reason, the verdict and judgment will be reversed, and the cause remanded for a new trial.

Certain other assignments of error will be discussed for the purpose of clarifying issues on retrial.

█ Appellant has cited as error attempted impeachment by the prosecution of his credibility as a witness through the vehicle of a prior *accusation* of a felony.
"I.C.R. 9–1209. *Impeachment by adverse party.*—A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony." See I.C. §§ 19–2110, 19–3001.

Where, however, a character witness has testified as to defendant's generally good reputation, it is permissible on cross-examination to ask the character witness if he was aware of charges or rumors of the commission of specific criminal acts inconsistent with the good character he is called upon to prove. "Not to establish the truth of such reports, but primarily to test the credibility of the [character] witness and the weight of his evidence." State v. Brown, 53 Idaho 576, at 589, 26 P.2d 131 (1933); State v. Ward, 51 Idaho 68, 1 P.2d 620 (1931). The rule has been criticized, but still is widely accepted. III Wigmore on Evidence, § 988 (3rd Ed. 1940, 1964 Supplement). A review of the record indicates that the prosecuting attorney substantially complied with the statutory and judicial requirements.

It is also contended that prejudicial error was committed in permitting the prosecuting attorney to cross-examine the defendant about a prior inconsistent written statement without first showing him the state-

ment. Since it is not clear from the record whether the prior statement was written or oral, we shall merely remind the parties of the statutory rule:

"I.C.R. 9–1210. *Impeachment by showing inconsistent statements.*—A witness may also be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

Appellant contends that the court erred in not giving instructions concerning corroboration of testimony by an accomplice or accomplices. No request for instructions on this point of law was made. In view of the fact that this case will be retried, however, we will point out that:

" ' "An 'accomplice' is a person concerned in the commission of a crime, whether he directly participates in the commission of the act constituting the offense or aids and abets in its commission, or, not being present, has advised or encouraged its commission." ' State v. Gilbert, 65 Idaho 210, at 215, 142 P.2d 584, at 585 (1943).

"See State v. Grimmett, 33 Idaho 203, 193 P. 380 (1920); State v. Brown, 53 Idaho 576, 26 P.2d 131 (1933).

" ' "An 'accomplice' is a responsible person whose wilful participation in the commission of a crime, when that fact is established by competent evidence in a court of requisite jurisdiction, renders him liable to a conviction of the offense." ' State v. Grimmett, 33 Idaho 203, at 212, 193 P. 380, at 382 (1920).

" 'Mere presence at, acquiescence in, or silent consent to the commission of an offense is not, in the absence of a duty to act, legally sufficient, however, reprehensible it may be, to constitute one a principal, an accessory, an aider and abettor, or an accomplice. An accomplice is one who is joined or united with another; one of several concerned in a felony; an associate in a crime; one who co-operates, aids, or assists in committing it.' State v. Altwatter, 29 Idaho 107, at 111, 157 P. 256, at 257 (1916).

" ' \* \* \* a mere mental state of uncommunicated consent or acquiescence on the part of a bystander, where a crime is being instigated, is not sufficient to make him an accomplice in its commission. Some aiding, abetting or actual encouragement on his part is essential.' State v. Grant, 26 Idaho 189, at 197, 140 P. 959, at 962 (1914)." State v. Gonzales, 92 Idaho 152, 438 P.2d 897 (1968).

An accomplice is one of several "principals" to a criminal undertaking as defined by statute. I.C. § 18–204;[11] State v. Gonzales, *supra.*

I.C. § 19–2117 requires that:

"A conviction can not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, it if [*sic*] merely shows

11. "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics, or idiots, to commit any crime, or who by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or coercion, compel another to commit any crime, are principals in any crime so committed."

the commission of the offense, or the circumstances thereof."

 If it appears as a matter of law that a witness is an accomplice of the defendant, the court should so instruct the jury and also should instruct them concerning the necessary corroboration of his testimony. If a question of facts exists as to the accomplice status of the witness, it is the duty of the trial court to instruct the jury on the law as to accomplices in such manner as to submit to the jury for its determination the issue as to whether the witness was an accomplice of defendant, and further to inform the jurors that if they found that the witness was an accomplice of defendant, then his testimony must be corroborated by other evidence as required by statute in order to sustain a conviction based thereon. State v. Gonzales, *supra*; State v. Brown, *supra*; State v. Grant, 26 Idaho 189, 140 P. 959 (1914). An instruction on the character and degree of corroboration should be given too. State v. Gonzales, *supra*; see, State v. Bassett, 86 Idaho 277, 385 P.2d 246 (1963); State v. Brown, *supra*; State v. McCandless, 70 Idaho 468, 222 P.2d 156 (1950).

In addition, in State v. Rose, 75 Idaho 59, at 64, 267 P.2d 109 (1954), it was stated

"The evidence required to corroborate the testimony of an accomplice, before a conviction can be had, is not furnished by the testimony of another accomplice. If two or more accomplices testify the same corroboration is required as if there were only one. An accomplice can neither corroborate himself nor another accomplice sufficiently to comply with the requirements of the statute."

See cases cited therein; but see, State v. Brown, *supra*.[12] Under a proper factual situation, the jury should be apprised of this rule.

 Finally, it would seem that the victim of a rape may corroborate testimony of an accomplice of the defendant and, where necessary, the accomplice may corroborate the victim's testimony. See, State v. Rose, *supra*.

For the reasons cited, the conviction and judgment are reversed, and the cause is remanded to the district court for a new trial.

McFADDEN, C. J., and McQUADE, SPEAR, JJ., and SCOGGIN, D. J., concur.

---

12. State v. Brown is doubtful authority on this particular point. On one page, it apparently approves of an instruction which is similar in language to the holding of State v. Rose. Later on, however, State v. Brown indicates that an accomplice's testimony may be corroborated by testimony of another accomplice.