(June 18, 1914.)

## STATE, Respondent, v. WALTER A. GRANT, Appellant.

[140 Pac. 959.]

ARSON—CORROBORATION OF EVIDENCE OF ACCOMPLICE—SEC. 7871 CON-
STRUED—INSTRUCTIONS—QUESTION OF ACCOMPLICE FOR JURY—
WHAT NECESSARY TO CONSTITUTE ACCOMPLICE—INDETERMINATE
SENTENCE ACT—DISCRETION OF TRIAL COURT IN DENYING MOTION
FOR NEW TRIAL.

1. Under the provisions of sec. 7871, Rev. Codes, the corrobo-
rating evidence required to substantiate the testimony of an
accomplice must be upon some material fact or circumstance
which, standing alone and independent of the testimony of the
accomplice, tends to connect the defendant with the commission
of the offense. (*State v. Knudston,* 11 Ida. 524, 83 Pac. 226,
approved.)

2. When the question, as to whether a witness is an accom-
plice, arises in a criminal case under sec. 7871, Rev. Codes, it is
the duty of the trial court to instruct the jury on the law of
accomplices, and leave the question as to whether or not any wit-
ness is an accomplice in the commission of the offense charged,
for the decision of the jury as a matter of fact, unless it appear
without substantial conflict in the testimony that such witness was
an accomplice.

3. In order to make a person an accomplice in the commis-
sion of a crime, some aiding, abetting or actual encouragement,
by such person must be shown. Mere presence at the plotting
of a crime or silent acquiescence in its commission is not, in the
absence of a legal duty to act, sufficient to constitute one an
accomplice.

4. The failure to disclose known facts regarding the commis-
sion of a crime does not render one having such knowledge an
accomplice of the person who committed the crime.

5. *Held,* that under the provisions of sec. 1, chap. 200, of
the laws of 1911 (Sess. Laws. 1911, p. 664), amending sec. 1
of the indeterminate sentence act of 1909, taken together with
sec. 7008, Rev. Codes, fixing the penalty for the crime of arson
in the first degree at a minimum sentence of two years and maxi-
mum for life, the defendant was legally sentenced to serve a
maximum term of fifty years in the state penitentiary, with a
minimum of twenty-five years.

6. A wide discretion is vested in the trial court in determining the weight to be given to the statements contained in affidavits on motion for a new trial on the ground of newly discovered evidence, and the action of the trial court in denying such motion will not be disturbed where the discretion reposed is not shown to have been abused.

7. The action of the trial court refusing to strike from the files counter-affidavits submitted by the state on defendant's showing on motion for a new trial, on the ground that such counter-affidavits are immaterial and irrelevant, is not a ground for reversal of a judgment of conviction, where it does not appear that the defendant has been prejudiced by allowing such counter-affidavits to remain in the record.

APPEAL from the District Court of the Fifth Judicial District, in and for Bannock County. Hon. J. M. Stevens, Judge.

The defendant was convicted of the crime of arson in the first degree and appealed. Judgment *affirmed.*

Clark & Budge and Carl Barnard, for Appellant.

"The corroborating evidence required by sec. 7871, Rev. Codes, must be upon some material fact or circumstance which, standing alone and independent of the evidence of the accomplice, tends to connect the defendant with the commission of the offense." (*State v. Knudtson,* 11 Ida. 524, 83 Pac. 226; *State v. Bond,* 12 Ida. 424, 86 Pac. 43.)

"Where the facts are not in dispute, where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice." (*People v. Coffey,* 161 Cal. 433, 119 Pac. 901, 39 L. R. A., N. S., 704; *People v. Bunkers,* 2 Cal. App. 197, 84 Pac. 364, 370.)

This court held in the *Matter of Setters,* 23 Ida. 270, 128 Pac. 1111, that under the provisions of the indeterminate sentence act of March 11, 1909, where the minimum sentence is fixed by law, the court has no power to fix a different minimum.

The affidavits of George Charles Edwards and Barney Horgan set forth facts sufficient to have justified and required the trial court to grant appellant's application for a new trial. (*Bates v. State* (Miss.), 32 So. 915; *Stewart v. State,* 52 Tex. Cr. 100, 105 S. W. 809; *Piper v. State,* 57 Tex. Cr. 605, 124 S. W. 661.)

J. H. Peterson, Atty. Genl., J. J. Guheen and T. C. Coffin, Assistants, and D. C. McDougall, for Respondent.

As to whether or not a witness is an accomplice is a question for the jury, even though the testimony is not in conflict, for it is almost always necessary to construe the language used by the witnesses for the purpose of determining the precise connection of a witness with the one who committed the crime. (*People v. Creegan,* 121 Cal. 554, 53 Pac. 1082; *People v. Coffey,* 161 Cal. 433, 119 Pac. 901, 39 L. R. A., N. S., 704; *People v. Bunkers,* 2 Cal. App. 197, 84 Pac. 364, 370.)

Consenting and acquiescing in the commission of a crime does not render one an accomplice within the meaning of sec. 7871, or a principal within the meaning of sec. 6342, Rev. Codes. (*Moore v. State,* 4 Okl. Cr. 212, 111 Pac. 822.)

The witness Truman, alias Edwards, was not an accomplice in the commission of the crime in the case at bar. (*Levering v. Commonwealth,* 132 Ky. 666, 136 Am. St. 192, 117 S. W. 253, 19 Ann. Cas. 140.)

The corroboration in the case at bar, independent of the testimony of Edwards, is sufficient under sec. 7871, Rev. Codes. (*Chandler v. State,* 60 Tex. Cr. 329, 131 S. W. 598.)

When a new trial is asked upon the ground of newly discovered evidence, the truth of the affidavits and their materiality are essential elements. (*Arnold v. Skaggs,* 35 Cal. 684; *People v. Weber,* 149 Cal. 325, 86 Pac. 671.)

"Mere concealment of a crime, or falsifying about knowledge thereof, does not render a witness an accessory or accomplice." (*Alexander v. State,* 49 Tex. Cr. 93, 90 S. W. 1112; *Schackey v. State,* 41 Tex. Cr. 255, 53 S. W. 877; *Alford v. State,* 31 Tex. Cr. 299, 20 S. W. 553.)

AILSHIE, C. J.—In the month of July, 1913, the appellant, Walter A. Grant, and one W. M. Truman, generally known as Billie Edwards, were engaged in conducting in the city of Pocatello the Horseshoe Pool Hall, which contained in addition to pool tables a stock of tobacco and cigars. An important part of the business was an illegal traffic in intoxicating liquors, the county being at that time prohibition territory. Edwards was a partner of appellant in this illegal traffic, but had no interest in the legitimate part of the business. Associated with these two men about this time, as an assistant in their clandestine operations and as a hanger-on about the place, was a negro by the name of John L. Thomas, commonly known as "Frisco"; also another man by the name of McIlvaine. All these men, with the possible exception of Edwards, who had recently arrived in town, were already at that time in ill favor with the authorities. The appellant himself had been indicted at the March term of the district court for Bannock county upon two charges, one for maintaining a common nuisance in a prohibition district, the other for a violation of the anti-gambling law. To the first charge he plead guilty and was fined $500, which he paid. The second charge was still pending at the time of the occurrence of the events herein referred to. McIlvaine had been repeatedly arrested for bootlegging, and Thomas, according to his own testimony, was being constantly hounded by the police.

On July 21, 1913, according to the testimony of Edwards and Thomas, appellant sent a message to Thomas by Edwards that he would like to see him at the pool hall about midnight of that day. In the interview between appellant and Thomas at that hour in the back room of the pool hall, Edwards was present part of the time, passing back and forth, drinking with Grant and Thomas, and listening to much of their conversation. In this conversation Grant offered Thomas $100 if he would burn the residence of the prosecuting attorney, C. D. Smith, stating as a reason that he wanted to teach him a lesson for interfering too zealously with the bootlegging · business. After some parley, Thomas agreed to commit the crime for that sum, and it was agreed that on the following

day appellant should show Thomas where Smith lived. On the afternoon of July 22d Thomas met Edwards and Grant at the pool hall and started with them to go to Smith's house, which was in another part of the city. On their way, however, they saw a policeman at a distance and the members of the party separated. Later on in the afternoon Thomas again joined appellant, and the two proceeded to the locality of Smith's house, which was pointed out to Thomas by appellant. During the evening of that day Grant, Edwards, Thomas and McIlvaine met in the back part of the pool hall, and arrangements were completed, not only for the burning of Smith's house by Thomas, but for the burning of a policeman's house on the other side of the city by McIlvaine, with the avowed purpose of having the fires occur at the same time so as to embarrass the fire department in controlling them. At this interview also the parties partook freely of liquor to brace their nerves and make bigger fools of themselves than they usually were.

At about 2:30 on the morning of the 23d, Thomas made two attempts to carry out his part of the program. The first time the fire went out before getting well started. On returning to the pool hall he met Grant and Edwards there. Grant accused him of not having made a good job of it because no alarm had sounded. In about half an hour he started out again and made a second attempt, after which he returned to the pool hall finding Grant and Edwards still there. On this occasion the fire got quite a start, an alarm was given, and the conflagration was extinguished by the fire department. No alarm was heard at the pool hall and Grant again accused Thomas of having made a bad job of the undertaking. Shortly after the parties separated. Later on in the same day and toward evening they met again in Edward's lodgings. Thomas demanded pay for his services. Edwards said that he ought to receive something, and Grant thereupon gave him $5.

Other evidence was introduced by the state, mostly in the way of corroboration of the statements made by Thomas and Edwards. Concerning this evidence, it is sufficient to ob-

serve that although Thomas and Edwards are corroborated in minor details by credible witnesses for the state as to circumstances attending the commission of the crime, the circumstances testified to can hardly be deemed to connect the defendant with the crime. (*State v. Knudtson,* 11 Ida. 524, 83 Pac. 226.)

It was shown, among other things, that he had a motive for ill-will against the prosecuting attorney, and it was testified that he had made a threat against him several months before. But on the whole such corroboration was not sufficient, and his conviction must be considered to depend upon the evidence of the witnesses Thomas and Edwards, the first of whom is a self-confessed accomplice. Sec. 7871, Rev. Codes is as follows:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

The trial judge instructed the jury as follows: "You are instructed that an 'accomplice' is one who is concerned in the commission of a crime or connected with the crime committed, either as principal offender or as one who advises, aids or assists in the commission of the unlawful act.

"If you find from the evidence that on or about the 23d day of July, 1913, the place of residence of C. D. Smith of Pocatello, was burned and that the witnesses, W. M. Edwards and John L. Thomas, were concerned in the burning of said building, that is to say, that said Edwards and Thomas were accomplices in the commission of said crime; and if you further find that the evidence connecting the defendant, Grant, with the commission of said crime, is the testimony of said Edwards and Thomas, uncorroborated by other evidence, which in itself, and without the aid of the testimony of said Edwards and Thomas, tends to connect said defendant with

said crime, then you are instructed that you must find the defendant not guilty.''

Inasmuch as the jury found the defendant guilty with this instruction before them, they must have concluded, either that there was corroborating evidence connecting Grant with the commission of the crime, independent of the evidence of Edwards and Thomas, or that the witness Edwards was not an accomplice.

Our statute, sec. 7871, requiring the evidence of an accomplice to be corroborated, is taken *verbatim* from the California Penal Code, sec. 1111, and has been repeatedly construed by the California court.

In *People v. Creegan,* 121 Cal. 554, 53 Pac. 1082, that court says: ''It must be assumed from the verdict that, upon the evidence before them, the jury found that he was not an accomplice, and if this evidence was properly received their verdict must be accepted as conclusive of the fact.''

And in the case of *People v. Coffey,* 161 Cal. 433, 119 Pac. 901, 39 L. R. A., N. S., 704, the same court observes:

'' When the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury touching the law of accomplices, and leave the question whether or not the witness be an accomplice for the decision of the jury as a matter of fact. (*People v. Kraker,* 72 Cal. 459, 1 Am. St. 65, 14 Pac. 196.)''

The court continues further: ''Whenever the facts themselves are in dispute, that is to say, wherever the question is whether the witness did or did not do certain things, which, admittedly, if he did do them, make him an accomplice, the jury's finding, upon familiar principles, is not disturbed. But where the facts are not in dispute, where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice.''

And in *People v. Bunkers,* 2 Cal. App. 197, 84 Pac. 364, 370, it is stated in the syllabus as follows: ''Before a conviction for crime can be set aside for want of testimony corroborating the evidence of an accomplice, as required by Penal

Code, sec. 1111, it must appear without substantial conflict in the evidence that the witnesses who gave corroborative evidence were also accomplices, and where there is a conflict on that question, it will be presumed in aid of the verdict that the jury found that such witnesses were not accomplices.'' We believe that this correctly states the law.

In the first place, it will be noted that Edwards is not alleged to have participated in the actual commission of the crime by the man Thomas, but to have aided, abetted and encouraged its commission in association with the appellant Grant. It is admitted that he had a complete knowledge of what was going on; he was familiar with every step of the conspiracy; he was present at the successive interviews at which the crime was planned. Counsel for appellant have set forth in their brief at length those passages from the testimony which they claim show his criminal participation. But taking all this at its face value, none of the evidence cited shows active participation on the part of Edwards. He was present at these interviews, but he had a right to be on the premises in the pool hall where they occurred, being a partner in business with Grant.

It is charged that his actions indicate he kept watch on customers or others entering the premises, in order that appellant and Thomas might not be disturbed or overheard by others in the discussion of their nefarious undertaking. But this is not conclusive; the testimony shows that liquor was constantly in evidence at all these interviews in the back room of the pool hall, a condition of itself to be guarded from prying eyes in prohibition territory and on behalf of men who were already known violators of the law. On the other hand, it was brought out in the cross-examination of Thomas that Edwards at a certain stage of the conspiracy expressed strong disapproval of this plot, which circumstance Edwards also states in his own testimony. Asked upon cross-examination why he did not interfere to prevent it, or notify anyone, he replied: ''I didn't think that he would do it; I thought that it was whisky talk.''

But granting counsel's contention to the extent that the attitude of Edwards was on the whole an attitude of acquiescence, that he was quite willing the crime should be committed, that he knew all that was going on and still concealed his knowledge from the officers of the law and the party against whom the crime was concocted, does that attitude make him an accomplice?

As we have seen, the trial court defined the meaning of the term "accomplice" in his instruction to the jury in this case, as "one who is concerned in the commission of a crime or connected with the crime committed, either as principal offender, or as one who advises, aids or assists in the commission of the unlawful act." While this definition might perhaps have been made more explicit, it properly advises the jury that an accomplice must at least be "one who advises, aids or assists." The evidence does not show that Edwards was anything more than an interested listener at these interviews, not present at all the conversation, taking little part in it himself, not encouraging in any way the commission of the crime. The most overt act of which he can be accused, so far as disclosed by the record before us, was accompanying the appellant and Thomas on the occasion when appellant proposed to show Thomas where Smith's house was.

Now, a mere mental state of uncommunicated consent or acquiescence on the part of a bystander, where a crime is being instigated, is not sufficient to make him an accomplice in its commission. Some aiding, abetting or actual encouragement on his part is essential. (12 Cyc. 186.) As said in the leading case of *Levering v. Commonwealth*, 132 Ky. 666, 136 Am. St. 192, 117 S. W. 253, 19 Ann. Cas. 140; "To constitute one either a principal, an accessory, an aider and abettor, or an accomplice, he must do something; must take some part; must perform some act or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime. Mere presence or acquiescence in, or silent consent to, is not, in absence of duty to act, legally sufficient, however reprehensible it may be, to constitute one a principal or an accessory, or an aider or abettor, or an

accomplice." See, also, on this point, *Moore v. State,* 4 Okl. Cr. 212, 111 Pac. 822; *Chandler v. State,* 60 Tex. Cr. 329, 131 S. W. 598; 1 Am. & Eng. Ency. of Law, 391.

Edwards held toward Smith, the prosecuting attorney, no such relation as would make the failure on Edwards' part to endeavor to prevent the execution of a plot to burn Smith's house evidence of Edwards' guilty agency in the perpetration of the crime. (Wharton on Criminal Law, 11th ed., sec. 171; *Levering v. Commonwealth, supra.*)

Nor does the failure to disclose facts regarding the commission of a crime render a person having knowledge of such facts an accomplice of the one who committed the crime, (*Bird v. United States,* 187 U. S. 118, 23 Sup. Ct. 42, 47 L. ed. 100; *Melton v. State,* 43 Ark. 367; *Cruse v. State* (Tex. Cr.), 77 S. W. 818; *Alexander v. State,* 49 Tex. Cr. 93, 90 S. W. 1112.)

It is further contended by counsel for appellant that the judgment of conviction in this case is illegal, in that appellant was given a sentence of not less than 25 nor more than 50 years. The penalty provided by our statute for the crime of arson in the first degree is a minimum of two years, which may be extended to life. (Sec. 7008, Rev. Codes.) This court held in the case of *In re Setters,* 23 Ida. 270, 128 Pac. 1111, that under sec. 1 of the indeterminate sentence act of 1909, where the minimum sentence is fixed by law, the court is not authorized to fix a different minimum. In the case at bar, however, the defendant was sentenced under the provisions of sec. 1, chap. 200 of the Laws of 1911 (Sess. Laws 1911, p. 664), amending sec. 1 of the indeterminate sentence act of 1909, in which amendment the following language occurs: "The court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term of imprisonment which shall be not less than the minimum prescribed by law, nor less than six months in any case . . . . and the minimum term of imprisonment fixed by the court shall not exceed one-half of the maximum term of imprisonment fixed by statute; provided further: that in all cases when the maximum sentence, in the discretion of the court,

may be for life or any number of years, the court imposing the sentence shall fix a maximum sentence.''

Under this provision of the amended statute the appellant was lawfully sentenced.

Appellant also assigns as error the overruling of his motion for a new trial, and the overruling of his motion to strike the counter-affidavits filed by the state. The affidavits submitted by defendant upon this motion purport to make a showing of newly discovered evidence. The two principal affidavits are made by George Charles Edwards and Barney Horgan, both inmates of the county jail and convicted bootleggers. The first sets forth various conversations overheard by affiant between Billy Edwards and the negro Thomas, who were at the same time confined in the county jail, from which it is made to appear that the conviction of appellant was the result of a conspiracy between Edwards and Thomas to give perjured testimony against appellant at his trial. Horgan's affidavit alleges admissions made by the witness Edwards as to appellant's innocence.

The state filed a number of counter-affidavits, and among others, two by other inmates of the county jail, stating that they were offered $50 by the affiant Horgan, if they would make affidavits on behalf of appellant. The state also filed an affidavit by R. W. Jones, court reporter, setting forth a conversation between Thomas and Edwards long subsequent to the commission of the crime. It is difficult to see the materiality of this last affidavit as a part of the state's counter-showing, and the trial court might properly have stricken it from the files, but it is not shown how its being allowed to remain there has prejudiced appellant.

The trial court, in denying the motion for new trial on the ground of newly discovered evidence, doubtless viewed with some suspicion the source of the showing made, and under the circumstances would have been justified in distrusting the credibility and disinterestedness of the affiants, George Charles Edwards and Barney Horgan. A wide discretion is vested in the trial court in determining the weight to be given to the statements contained in affidavits upon motion for a

new trial, and we do not think that discretion was abused by the trial judge in this instance.

Counsel for appellant in his argument before this court made certain statements of fact *dehors* the record, accompanied by the explanation of peculiar exigencies, which in his opinion made it his duty to do so, and at the same time informally presented to the court an unauthenticated report of the testimony of the witness Thomas upon the later trial of the witness Edwards for the same offense of which appellant was convicted; such testimony having been given at a date subsequent to the filing of the transcript in the case at bar in this court. We sympathize with the zeal displayed by counsel on behalf of his client, and may here properly observe that the client is in no respect going to suffer from any lack of diligence on the part of his counsel. We have, however, examined this purported testimony of Thomas at the trial of Edwards, from which it appears that Thomas avers his testimony upon the trial of appellant Grant, with regard to the noncomplicity of Edwards, to have been false and perjured, and that in giving that testimony he purposed to shield Edwards, whom he now charges to have been equally culpable with appellant in the commission of this crime. But his testimony on the later trial in no way tends to relieve the appellant Grant from the stigma of guilt. Furthermore, the jury may as well have believed the original testimony given by the witness, as that upon the second trial wherein he testified that his first story was false.

The matters thus presented might possibly afford ground for the exercise of executive clemency, but this court in determining any case submitted to it upon appeal is necessarily confined to a consideration of such facts as are made to appear from the record.

Under the well-known rule, the jury who heard the witnesses in this case and observed their demeanor on the stand were the exclusive judges of the weight to be attached to their evidence. They listened to the narrative of Thomas, who committed the crime at the instigation of appellant and confessed to them in detail the manner of its instigation and

perpetration. They heard the corroborating testimony of Edwards, and under the instruction of the court were the proper arbiters of the question as to whether his participation in the instigation of this felony was such as to make him an accomplice in the commission of it. They listened to the witnesses for the defense, each one of whom, including the defendant, is shown by the record to have been a convicted violator of the law. It was for the jury to say whom among these witnesses they believed and whom they disbelieved, and we are not inclined to disturb their verdict.

The judgment of the lower court is *affirmed.*

Sullivan, J.; concurs.