633 P.2d 1140

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Wendell Leroy WEST, Defendant-Appellant.**

**No. 13236.**

Supreme Court of Idaho.

Sept. 9, 1981.

Roger S. Burdick of Hart, Burdick & Healzer, Jerome, for defendant-appellant.

David H. Leroy, Atty. Gen., James F. Kile, Sp. Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Chief Justice.

Defendant appellant West entered a plea of guilty to a charge of malicious destruction of property in excess of $1,000 and was sentenced to an indeterminate term in the Idaho State Penitentiary not to exceed five years. West appeals from that sentence and from the trial court's denial of a motion to reconsider the sentence.

The record discloses that in October of 1978 the defendant and two other individuals stole a 1978 pickup in Jerome County and drove it into the mountains. The defendant and his companion thereafter proceeded to go on a four day spree. They broke into a privately owned mining cabin in a remote area of Camas County and did extensive damage. Upon later examination of the cabin, the authorities found it to be a complete shambles. Food had been consumed, thrown all over the walls, and scattered around the cabin and countryside. Bedding was strewn about. Blasting materials and other implements used in mining had been taken. The defendant and his companions apparently attempted to dynamite trees. They also cut a beam in the interior of the cabin, broke out windows and window frames, and took a chain saw to some of the property in and about the cabin, including a refrigerator. The chain saw was thrown down a hill, damaging it.

During the four day spree, the defendant and his companions damaged the stolen pickup to such an extent that it was considered a total loss. They also destroyed or lost nearly all of the tools which were in the pickup at the time it was stolen. The total damage done to the cabin, the pickup, and other personal property was estimated to be in excess of $12,000.

Following the spree, the defendant was arrested. Defendant was charged in both Camas and Jerome Counties. In Jerome County, he was charged with grand larceny of the pickup and tools. Defendant pleaded guilty to the grand larceny charge, a felony. The sentencing judge, Judge Cunningham, imposed a sentence the length of which is not reflected in the record. Jurisdiction was retained for the first 120 days pursuant to I.C. § 19–2601(4).

In the Camas County case, defendant was charged in a three-count information with second degree burglary and two counts of malicious destruction of property. He pleaded guilty to one count of malicious destruction of property in excess of $1,000, a felony. In an apparent plea bargain, the other two counts were dismissed. Judge Kramer sentenced the defendant to an indeterminate term in the Idaho State Penitentiary not to exceed five years. This latter sentence is the subject of this appeal.

The presentence investigation for the Camas County action was waived, and the court relied on the presentence investigation prepared for the Jerome County action. The report was generally unfavorable. The defendant's juvenile criminal record included convictions of petit larceny, threatening use of a telephone, and a fish and game violation. The defendant also admitted running away from home on several occasions while a juvenile. The presentence investigator recommended incarceration in the penitentiary primarily because of the seriousness of the crime and the defendant's lack of respect for other persons' property. This recommendation apparently impressed the sentencing judge, who specifically relied on the presentence investigator's conclusion that the defendant demonstrated "little, if any, remorse for his actions and conduct."

The maximum term of imprisonment for the crime of malicious injury to property in excess of $1,000 is five years. I.C. § 18–7001. Where the sentence imposed is within statutory limit,[1] a defendant

---

1. Although defendant was given the maximum number of years under I.C. § 18–7001, he was not given the maximum permissible sentence. I.C. § 19–2513A, applied in conjunction with

has the burden of showing a clear abuse of discretion on the part of the sentencing court. *E. g., State v. Bowcutt,* 101 Idaho 761, 620 P.2d 795 (1980).

■ In view of the foregoing, the trial court did not abuse its discretion by failing to grant the defendant either probation, a 120-day rider or a lesser sentence. Our review of the record convinces us that the trial court did not abuse its sentencing discretion. The defendant's sentence is therefore affirmed.

McFADDEN, DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

Defendant-appellant Wendell Leroy West pled guilty to one count of malicious destruction of property in excess of $1,000 and was sentenced to an indeterminate term in the Idaho State Penitentiary of not to exceed five years. The crime which he pled guilty to involved what is commonly referred to as vandalism. West and another youth, who was 17 years old and had a fifth grade education, drove to a remote cabin in Camas County and stayed there for several days. Prior to leaving, they broke windows and used a chain saw to cause other damage to the cabin and the surrounding area. Some bedding and foodstuffs were also strewn around the area of the cabin.

At the time of the crime, West was but eighteen years old, with a ninth grade education. The record shows that he was a follower, not a leader, and that he was easily influenced by those around him. Prior to being arrested for the crime in question, and while still a juvenile, West had several minor brushes with the law, the most serious of which was a conviction of using a telephone to threaten, and the least serious of which was fishing with eggs and worms in an area restricted to artificial lures. The instant case is West's first felony conviction. The sentence imposed, although indeterminate, was for the maximum amount of time allotted for the offense of malicious destruction of property.[1]

West argues that the sentence was an abuse of the trial court's discretion. He argues that, given his age, the nature of the crime, his background and the fact that this is his first felony conviction, the appropriate sentence would have been either (1) probation, (2) a 120 day evaluation period in the North Idaho Correctional Institute (N.I. C.I.), or (3) a lesser amount of time in the penitentiary.

The trial court stated in imposing sentence:

"You realize, Mr. West, first that the presentence investigation, the concluding part of it states that probation would not be realistic. It says, 'This subject,' which means you, 'showed little, if any, remorse for his actions and conduct during this offense.' And then they go on to state, and this is done by Teresa Bodine, the Presentence Specialist, she says, 'Because of the seriousness of this crime and his apparent inconsiderateness this defendant has for other people's property, this subject could benefit by extensive counseling in a highly structured environment.'

"Do you know what that means?

"DEFENDANT WEST: No, sir.

"THE COURT: She is recommending I send you to the Penitentiary.

"DEFENDANT WEST: Yes, sir.

"THE COURT: Do you have anything to say about that?

"DEFENDANT WEST: No, sir.

. . . .

"THE COURT: Well, of course, here I have before me two young men. Courts are supposed to take into consideration what could be done for them to try to rehabilitate them and I always try to do that.

"DEFENDANT WEST: Yes, sir.

I.C. § 18–7001, would permit the sentencing court to impose a fixed term sentence of up to five years, thereby insuring a lengthy period of incarceration.

1. I.C. § 18–7001 allows for a maximum penalty of $1,000 fine and five years in prison. I.C. § 19–2513A allows the sentencing court to impose a determinate term.

"THE COURT: The Legislature of this State has set up some specific guidelines and the Supreme Court has set up specific guidelines, and I have taken all those into consideration.

"Among those guidelines are how can you best be rehabilitated. What is in your best interests. There is also to be taken into consideration what's the best interests of society.

. . . .

"Anyway, I think any Judge is disturbed when they have two young men before them in this situation, but society is disturbed too when you go out and do the malicious things that you boys did. We just can't allow this country to be run by hoodlums and you demonstrated at least for that period of time that that's exactly what you were.

. . . .

"[I]t's obvious to me that probation to me can't be the answer. I think society has its rights too and that's to a peaceful existence if we can obtain it."

## PROBATION

The presentence report referred to by the court stated that "a recommendation for probation would not be realistic", and cited the following factors as weighing against probation: (1) West's failure to live up to the terms of a prior probation, (2) the fact that West was unable to maintain steady employment, (3) the fact that West showed little or no remorse for his crime, (4) the fact that, given his lack of employment potential, West would probably be unable to make restitution,[2] and (5) the benefit to West of counseling in a highly structured environment. The trial court was entitled to consider this recommendation, as well as the facts upon which the recommendation was based, in excluding probation as a sentencing alternative. See I.C. § 20–220; I.C.R. 32(a), (c); Idaho Judges Sentencing Manual § 5.2. The court was also entitled to consider deterrence and protection of the public in excluding probation. I.C. § 19–

2521(1)(d), (e); State v. Ogata, 95 Idaho 309, 508 P.2d 141 (1973).

While several factors here weigh heavily in favor of probation, including (1) West's age, (2) the fact that this was his first felony conviction and his first crime as an adult, (3) the fact that the crime, while serious, was a crime against property and did not involve violence, and (4) the fact that all parties agree that West was a follower and not a leader, it cannot be said that the sentencing court abused its discretion in striking the balance against probation in favor of some period of incarceration.

## RETAINED JURISDICTION

Turning to West's claim that the court abused its discretion in not exercising its authority under I.C. § 19–2601(4) to suspend the execution of judgment and retain jurisdiction over West for 120 days while he was evaluated at N.I.C.I: The staff of N.I.C.I., in describing their evaluation and rehabilitation facilities, has suggested the following criteria as weighing in favor of utilizing N.I.C.I. and 120 days of retained jurisdiction: "(1) First felony conviction, preferable. (2) Age—no factor. (3) Property crimes preferable." Idaho Judges Sentencing Manual § 7.9 at 10. According to the criteria of N.I.C.I. itself, then, West was a perfect candidate for treatment and evaluation at that facility. Of course, if the staff at N.I.C.I. had concluded that no alternative other than incarceration was suitable for West, the court could have allowed its jurisdiction to lapse and West would simply have been transferred to the penitentiary with no necessity for a further court hearing. State v. Ditmars, 98 Idaho 472, 567 P.2d 17 (1977), cert. den. 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978). Prior to the court making the decision whether to modify its sentence or simply allow its jurisdiction to expire, the staff at N.I.C.I. would, however, upon request, provide the court

2. The constitutionality of considering a person's ability to pay restitution as a factor in

sentencing is not raised in this appeal, and I join the Court in not discussing it.

with an evaluation containing the following:

"1. Personality evaluation, showing his strengths and weaknesses in resulting characteristics both prior to his incarceration and currently and his behavior patterns in crisis areas.

"2. A prescription program recommending various programs, such as: vocational rehabilitation, work release, on the job training, volunteer friend program, academic, group-individual counseling, psychological, probation supervision, medical needs and/or handicaps, and special needs and/or areas of concern.

"3. Progress report in the areas of academic instruction, work record-habits, disciplinary reports, group and individual counseling and special involvement. This report also shows release plans for him, with information about the quality of family relationships, employment, residence, financial status and other community supported resources.

"4. A counselor's evaluation.

"5. A recommendation to the court and probation officer." Idaho Judges Sentencing Manual § 7.9 at 11–12.

The evaluation and testing of a convicted felon during 120 days at N.I.C.I. is clearly more in-depth and extensive than is possible for a presentence investigator. Additionally, more time and resources to investigate viable alternatives to incarceration are present at N.I.C.I. Finally, the recidivism rate for those who have gone through the program at N.I.C.I. is 13.6%,[3] which suggests that the vast majority of those who are counseled and released from N.I.C.I. have been turned from a life of crime and have become useful members of society.

In contrast to N.I.C.I., the penitentiary is filled with hardened criminals, and has been properly characterized as a training school for crime. While rehabilitative programs are available at the penitentiary, they may be undertaken only in an atmosphere which is itself much less conducive to rehabilitation than that at N.I.C.I. In short, it is unlikely that the sentencing court sent West to the penitentiary in an effort to help him rehabilitate himself. If it had, in light of the superior programs and facilities at N.I.C.I., such would have been an abuse of discretion. From the statements of the court at sentencing, however, it is evident that the court based its sentence on the deterrent effect which time in the penitentiary might have. As we have stated, deterrence, both for the individual involved and other potential lawbreakers, is a legitimate factor to take into consideration in arriving at a sentence; it is in fact entitled to considerable weight. See I.C. § 19–2521(1)(d), (e); Idaho Judges Sentencing Manual § 8.2 at 2–3.

While it would appear that a term at N.I.C.I. would have as much or more of a "deterrent" effect on West as a term in the penitentiary, in the sense that the likelihood of continued criminal behavior would be reduced, it cannot be said as a matter of law that the sentencing judge, who had the opportunity to observe West's behavior and converse with him, abused his discretion in concluding that, for West, exposure to the penitentiary would be more of a deterrent than 120 days at N.I.C.I.[4] The court clearly had the discretion to make that choice. State v. Seifart, 100 Idaho 321, 597 P.2d 44 (1979). Moreover, the sentencing court was at liberty to conclude that time in the penitentiary would have more of a deterrent effect on other would-be vandals than a term at N.I.C.I. Finally, the court could properly consider the need for retribution,

---

3. Idaho Judge's Sentencing Manual § 7.9 at 13. Some allowance in this figure must be made for those who subsequently engage in crime but are not apprehended. The success rate, however, is still very impressive.

4. Of course, a term at N.I.C.I. always has the potential for a penitentiary term at the end of it and, at first blush, it would appear that going straight to the penitentiary adds nothing in terms of deterrence to time spent at N.I.C.I. followed by a penitentiary term. The court may have concluded, however, that the sudden exposure to penitentiary life would have more of a deterrent effect than a gradual introduction through N.I.C.I.

see *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978), and being warehoused at the penitentiary undoubtedly extracts more of society's pound of flesh than does time at N.I.C.I. I conclude that the sentencing court did not abuse its discretion in deciding against sending West to N.I.C.I. for 120 days.

West argues that, under the circumstances of this case, the maximum indeterminate term is an excessively harsh punishment. Only the writer of this opinion agrees.[5] In this regard I do, as I must, exercise my independent judgment. In doing so I am in part guided by former members of the Court who were willing to do the same. Particularly I refer to the vote of Justice Keeton in *State v. Weise*, 75 Idaho 404, 273 P.2d 97 (1954).

Because of West's age, his inability to resist the influences of his associates, the fact that this was his first serious offense, the fact that the Department of Corrections feels that West was a good candidate for N.I.C.I. and, necessarily, not particularly benefited by exposure to the general prison population and services, and the fact that this was a crime against property involving no violence, I would in the interests of justice modify West's sentence from five to two and a half years.[6]

---

**5.** I would not denigrate the seriousness of the damage which was done by West here, but am influenced by the logic of counsel's argument that a lesser term will serve the dual purposes of deterrence and retribution as fully as the five year term imposed.

**6.** Any deterrent effect which the penitentiary might have on West has already occurred, or will never occur. If West or other would-be vandals are not deterred from such stupid and childish activities by even just one year in the penitentiary it is extremely unlikely that five will serve them any better.