764 P.2d 89

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Freddy B. RUIZ, Defendant–Appellant.**

**No. 17104.**

Court of Appeals of Idaho.

Oct. 7, 1988.

Addendum Upon Denial of Rehearing
Nov. 7, 1988.

Petition for Review Denied Jan. 10, 1989.

William J. Brauner and Byron K. Meredith (argued), Brauner, Meredith & Coffel, Caldwell, William B. Taylor, Jr., Grangeville, for defendant-appellant.

Jim Jones, Atty. Gen., David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Following a weekend big-game hunting trip with two companions in central Idaho, Freddy Ruiz was charged with four violations of Idaho's Fish and Game laws and regulations. The alleged offenses—all misdemeanors—were (1) discharging a firearm across a highway; (2) killing a deer after having previously killed another deer during the same hunting season; (3) killing a doe mule deer in an area not open for hunting such an animal; and (4) wasting a game animal by failing to care for the meat. A jury found Ruiz not guilty of the first three charges, but found him guilty of

the offense of wasting a game animal.[1] The judgment of conviction on the wasting offense was upheld on appeal to the district court. We, too, affirm the judgment.

Ruiz raises the following issues. First, he contends the verdicts of the jury, finding him guilty of the wasting charge but not guilty of the other charges, are inconsistent. Next, he argues that he was found guilty on the basis of testimony from accomplices—his two hunting companions —without corroboration of that testimony. Third, he avers there was insufficient evidence to support the verdict of guilty of wasting a game animal.[2] Before addressing these issues on their merits, we will briefly review the underlying facts which gave rise to the verdicts in this case.

Most of the facts presented by the evidence at trial were hotly disputed and were severely in conflict. The few salient facts that were undisputed are as follows. Ruiz, Dan Ady and Gary Gochenour (all residents of Canyon County) participated jointly in a hunting trip in Idaho County during the weekend of November 15–17, 1985. They used Gochenour's pickup-camper for transportation. Only Ruiz had a tag for hunting deer; the other two hunted for elk. On Saturday, November 16, Ruiz shot and took into possession a small buck deer. Due to a snowstorm, the trio left the hunting area on Sunday, November 17, returning to their homes in Canyon County. They proceeded south from Grangeville, Idaho, travelling by way of U.S. Highway 95 down White Bird Hill. They stopped for a short time, part way down the hill. There they saw several doe mule deer on the hillside. After parking the vehicle, the men watched the deer through binoculars. The ensuing events are disputed.

Dan Ady testified at trial that although they had discussed the fact that the White Bird Hill area was not open for hunting mule deer, Ruiz began shooting at the animals, across the road, notwithstanding protestations from both Ady and Gochenour that Ruiz should not shoot at all. When Ruiz wounded one of the deer, Gochenour shot at it also, according to Ady, but apparently without hitting it. The deer fell after a final shot from Ruiz. Ady testified that he told the other two that he did "not want anything to do with this." His testimony continued:

> After the deer was shot, the preparations were made of going up there and getting it began. Freddy asked me to go up and gut it and bring it down, and I refused and he said if I didn't go up and get the deer that he would say I shot it. And I just walked off and Freddy went to Gary behind the back of the trailer— or the camper, and they were talking back there, and Gary had come up and they had decided to go up there and get it and if I would drive the truck up a little ways and wait for a few minutes and come back down and get them.
>
> So I went ahead and did that, drove a quarter of a mile, and there were three or four cars that came down during that time. And I was scared, I didn't want to get caught with that thing.
>
> I waited up there for five to ten minutes and came back down and they still weren't through, and I sat there and waited on the side of the road for them. Finally Gary and Freddy come down the hill and get in the truck. Freddy does not have any blood on him that I observed, Gary's hands are bloody. They get in the car, we drive up to the look-out point, about an eight[h] to a quarter of a

---

1. I.C. § 36–1202, the Idaho law prohibiting wasting of game animals under which Ruiz was prosecuted, provides:

   *Wasteful destruction of wildlife or mutilation unlawful.*—It is a misdemeanor for any person to:

   (a) Waste. Through carelessness, neglect or otherwise, to allow or cause the waste of any game bird, game animal or game fish or any portion thereof usually eaten by humans.

2. As an additional issue on appeal, Ruiz also submits that the trial court erred in denying his motion for a new trial. The motion was based on the same grounds as the other issues now before us—alleged inconsistency of the verdicts, corroboration of accomplices' testimony, and sufficiency of the evidence to support the guilty verdict. Our determination on the merits of each of those issues, upholding the verdict over Ruiz' challenges, renders discussion of the new trial issue unnecessary.

mile. I pull over to the side on the left-hand side of the road and they get out, Freddy and Gary get out. Freddy—or Gary washes his hands, gets the blood off.

Q. How—with what does he wash his hands off?

A. They have a camper and it has some water, a little sink up there.

Q. Oh, okay.

A. And he was up there washing his hands. And that's when they decide to tag that deer and they did not—but they decided not [to] bring the deer with them, that Freddy would come back the next morning and get the deer.

Ady testified that they then proceeded on to their homes. Once he had arrived at his house, Ady called Pat Cudmore, an Idaho Fish and Game officer, and reported the White Bird incident.

The other hunter in the party, Gary Gochenour, provided testimony at trial consistent with the events related by Ady. He added that he had field-dressed the mule deer shot by Ruiz because Ruiz did not know how to dress it out. He confirmed that Ruiz had fired across the road at the animal and that Ruiz' shots had killed the deer. He admitted that he had shot at the mule deer also, but only after Ruiz had wounded it because "in the manual it tells you that you're to kill a wounded animal." He said he would not let Ruiz load the deer into the pickup "[b]ecause I didn't want it in my truck, and I told him that, that if he didn't come [back] up and get it, that I would turn him in." Gochenour disclosed that he later was given immunity by the state in exchange for his cooperation and testimony in this case.

However, another version of the events on the hill, attributable also to Gochenour, was presented at the trial during Gochenour's cross-examination by the defense. Ruiz' attorney introduced a tape recording of an interview of Gochenour conducted by the attorney on November 21, 1985. In that interview, Gochenour stated that he,

Ady and Ruiz had stopped on White Bird Hill and watched several hunters on top of the hill "shoot at [a] doe, and right after they shot it, Freddy and myself got into the camper and started eating and Dan kept watching." When the tape recording was introduced, Gochenour acknowledged having given the statement but denied that it was truthful. He was asked in what particulars he did not tell the truth. He replied "I was just agreeing with what Freddy was saying."

Freddy Ruiz also testified, in his own defense. His version of the events on White Bird Hill coincided with the statement made by Gochenour in the recorded interview with Ruiz' attorney. He said that his group stopped on White Bird Hill to eat; that while they were eating they saw several hunters shooting at doe mule deer; and that those hunters shot a deer. He denied shooting the doe mule deer, shooting across the highway, and leaving any deer meat to be wasted.

With respect to the testimony of Dan Ady—that he had contacted Fish and Game Officer Cudmore after arriving home—Officer Cudmore related that he immediately relayed the report to another officer in Idaho County. That officer, on the evening of November 17 (the same day as the alleged shooting of the mule deer) found the deer's carcass at the location and essentially in the field-dressed condition evidently described by Ady to officer Cudmore. He testified that the carcass was partially wasted because "birds had eaten most of the tenderloin and had started on the hindquarters." He waited in the area for about an hour and then left. He returned the next afternoon and removed the carcass. More of the meat had been eaten by birds and the meat was possibly soured. He confirmed that the White Bird Hill area was not open for hunting doe mule deer on the date in question.

Presented with this evidence, and considerable impeachment testimony,[3] the jury

---

**3.** Aside from the inconsistent versions presented by Gochenour's testimony and his recorded interview, other testimony was presented to im-

peach the credibility of all three hunters, Ruiz, Ady and Gochenour. For example, a former co-employee with Ruiz, who had worked with

found Ruiz not guilty of shooting across a highway, not guilty of killing a deer after having previously killed another deer during the same hunting season, and not guilty of killing a doe mule deer in a closed area. The jury, however, found Ruiz guilty of wasting a game animal, the doe mule deer.

## I

### Inconsistent Verdicts

■ We turn first to the issue concerning inconsistent verdicts. Ruiz argues that the verdict of guilty of wasting a game animal cannot rationally be reconciled with the verdicts of the jury finding him not guilty of shooting and killing the mule deer.

"Inconsistency" between verdicts is generally understood to mean some logical impossibility or improbability implicit in the jury's findings on several indictments or informations tried together or as between several counts of a single criminal accusation tried without severance of the counts. Annotations, *Inconsistency of Criminal Verdict with Verdict on Another Indictment or Information Tried at the Same Time*, 16 A.L.R.3d 866 (1967); *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information*, 18 A.L.R.3d 259 (1968). According to most authorities, consistency between the verdicts on simultaneously tried charges is unnecessary where the defendant is convicted on some counts but acquitted on others, and the convictions will generally be upheld irrespective of their rational incompatibility with the acquittals. *Id.* This view follows the opinion of the United States Supreme Court in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), recently reaffirmed in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (conviction will not be

vacated "merely because the verdicts cannot rationally be reconciled," 469 U.S. at 69, 105 S.Ct. at 479). However, some jurisdictions, including Idaho, have exhibited greater concern about inconsistency. They have taken the approach that if, upon a consideration of the facts and circumstances of the case, the verdicts can be explained on a rational basis, the verdicts on charges tried together will not be held impermissibly inconsistent. *State v. Garcia*, 102 Idaho 378, 630 P.2d 665 (1981); *State v. Crawford*, 104 Idaho 840, 663 P.2d 1142 (Ct.App. 1983). Thus, the threshold question in this case is whether the verdicts are reconcilable on a rational basis. We hold that they are.

The Idaho statute prohibiting the waste of game animals is silent with regard to any requirement that the person who is charged with violation of the statute must also be the same person who killed the animal.[4] This statute is similar to the law in some of our neighboring jurisdictions,[5] and dissimilar to others which explicitly place the responsibility for not wasting game upon the person who killed the animal.[6]

We have not been provided with, nor has our independent research disclosed, any decision in which a court construing a statute similar to I.C. § 36–1202 has required the killing and wasting of an animal to be committed by the same person. Nevertheless, Ruiz argues that unless such a requirement is read into the statute, the scope of the statute will be excessively broad. He contends that persons who had nothing to do with the killing of an animal will become criminals under the statute. This contention is being made for the first time on appeal. The trial court's instruction to the jury, given without objection, did not specify the killing of an animal as

him as a deputy prosecuting attorney in Canyon County, testified that Ruiz had a bad reputation for truthfulness. On the other hand, two other witnesses, including a state police officer, testified that Ruiz had a good reputation for truthfulness.

**4.** See footnote 1, *supra*.

**5.** See e.g., Cal.Fish and Game Code § 4304; Nev. Rev.Stat. § 503.050; Or.Rev.Stat. 498.042; Ut. Code Ann. § 23–20–8.

**6.** See e.g., Alaska Stat. § 16.30.010; Mont.Code Ann. § 87–3–102; Wyo.Stat. § 23–3–303.

an element or condition precedent to the crime of wasting.[7]

In any event, the facts of this case do not frame an issue regarding application of the statute to someone who had nothing to do with the killing of a game animal. Consistent with the verdicts on the other charges, the jury could have found that Ruiz shot at the animal without necessarily inflicting the fatal wound; that Ruiz dragged the dead deer to a place where it was cleaned by Gochenour because Ruiz himself did not know how to do it; and that Ruiz made the decision to leave the carcass on the hillside, declaring that he would return for it later. These facts, if believed, would establish a solid nexus between Ruiz and the events which culminated in the wasting of the deer. We need not decide today whether the statute also would apply to a case where a less substantial connection existed.

In sum, we find the verdicts on all the charges to be rationally reconcilable. The verdict of guilty of wasting a game animal will not be reversed on the ground of alleged inconsistency with the other verdicts.

## II

### Accomplice Testimony

Ruiz asserts that the testimony of Ady and Gochenour clearly established their status as accomplices. He contends that their testimony was uncorroborated, invoking the rule that a conviction cannot stand upon the uncorroborated testimony of an accomplice, I.C. § 19-2117.

Under I.C. § 19-2117, a defendant cannot be convicted on the testimony of an accomplice unless that testimony "is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof." The jury was given an instruction stating I.C. § 19-2117. In addition, the jury was given another instruction, defining "accomplice" consistent with Idaho case law. The instruction recited: "An accomplice is a person involved in the commission of a crime, whether he participates directly or indirectly. To be an accomplice it is sufficient to aid and abet, advise, or encourage the commission of the crime." *See, e.g.,* *State v. Aragon*, 107 Idaho 358, 690 P.2d 293 (1984); *State v. Swenor*, 96 Idaho 327, 528 P.2d 671 (1974); *State v. Gilbert*, 65 Idaho 210, 142 P.2d 584 (1943); *State v. Grimmett*, 33 Idaho 203, 193 P. 380 (1920). The accomplice issue was thus submitted to the jury.[8]

■ It is well settled that a person's status as an accomplice can be decided as a matter of law if it appears without substantial conflict in the testimony that the person participated in, or encouraged, the crime. *State v. Brown*, 53 Idaho 576, 26 P.2d 131 (1933). But where there is uncertainty whether a witness is an accomplice, the issue should be submitted to the jury to be determined as a question of fact, *State v. Gonzales*, 92 Idaho 152, 438 P.2d 897 (1968); *State v. Grant*, 26 Idaho 189, 140 P. 959 (1914). Thus, if there are facts in dispute or in conflict which raise a genuine issue as to whether a witness is indeed an accomplice, the court must submit that is-

7. The trial court's instruction stated:
   You are advised that the material elements of wasting a big game animal which the State must prove beyond a reasonable doubt are as follows:
   1. That on or about the 17th day of November, 1985, the Defendant Freddy B. Ruiz, was in Idaho County, Idaho at or near mile post 225 on U.S. Highway 95; and
   2. That at such time and place the Defendant did knowingly, wilfully, intentionally, and unlawfully waste all or part of a big game animal (mule deer doe).
   If you find that the State has proven all of the material elements of the charge then you

should find the Defendant guilty, however, if you find the State has failed to prove any one of the listed material elements then you must find the Defendant not guilty of that charge.

8. The record shows that defense counsel objected to the court's instruction defining an accomplice, on the ground that counsel had requested a more comprehensive one. The court refused to give the requested instruction because it was "too much of a comment on the evidence." No issue has been raised on this appeal with regard to that determination.

sue to the jury for resolution. *State v. Brooks*, 103 Idaho 892, 655 P.2d 99 (Ct. App.1982).

Here, contrary to Ruiz' assertion, we are not persuaded the evidence "clearly established" that Ady was an accomplice. Rather, the evidence was conflicting. It will be recalled that Ruiz testified he did not shoot or waste the mule deer. While he impugned Ady's credibility in several respects,[9] he did not describe any conduct or identify any statements attributable to Ady to show Ady had anything to do with shooting or wasting the mule deer. The other principal witness, Gochenour, provided inconsistent versions of the events on White Bird Hill, but neither of his versions tied Ady to the shooting or wasting of the mule deer—with one arguable exception. Gochenour testified that Ady moved the pickup truck, because he was told to do so by Gochenour, while Gochenour and Ruiz were field-dressing the doe. Gochenour also provided impeachment evidence against Ady, relating several incidents where Ady had made statements during the hunting trip which led Gochenour to "not believe what he was saying."[10] Consistent with Ruiz' subsequent testimony during the trial, Gochenour also testified that Ady had shot at other deer on the hunting trip, notwithstanding Ady's testimony to the contrary. Finally, the jury was presented with Ady's version of the events—that he wanted nothing to do with the mule deer incident, and that he notified the Fish and Game Department as soon as he arrived home.

■ We have held that some aiding, abetting or actual encouragement on the person's part is essential to make that person an accomplice. A bystander's mere acquiescence in, or silent consent to, the commission of an offense, however reprehensible the crime may be, is not sufficient to make that person an accomplice. *State v. Brooks, supra. See also, State v. Adair*, 99 Idaho 703, 587 P.2d 1238 (1978).

Here, Ady's mere presence during the events on White Bird Hill, and his singular act of moving Gochenour's vehicle at the latter's insistence, fell far short of establishing that Ady was an accomplice as a matter of law. A jury rationally could have found that Ady's role was more akin to that of an acquiescing bystander.

■ We conclude that the issue of whether Ady was an accomplice was properly submitted to the jury. Because the jury's verdict can be upheld on the basis of Ady's testimony, we deem it unnecessary to discuss separately the issue of corroboration of Gochenour's testimony.

### III

### *Sufficiency of the Evidence*

■ Based upon Ruiz' position with regard to the inconsistent verdicts and the alleged lack of corroboration of Ady's and Gochenour's testimony, we are also asked to decide whether the evidence was sufficient to support the conviction for wasting a game animal. Our preceding discussion disposes of the inconsistency and corroboration arguments. We thus are left only with a general attack on the evidentiary basis for the judgment of conviction.

A judgment of conviction, entered upon a jury verdict, will not be set aside where there is substantial evidence upon which a rational jury could find that the elements of the crime were proven beyond a reasonable doubt. *State v. Decker*, 108 Idaho 683, 701 P.2d 303 (Ct.App.1985). Where insufficiency of the evidence to support a conviction is presented as an issue for appellate review, we consider the facts in the light most favorable to the prosecution. *State v. Greensweig*, 103 Idaho 50, 644 P.2d 372 (Ct.App.1982); *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968). We accord to the jury the right to determine the credibility of witnesses, to weigh the

---

**9.** For example, Ruiz testified that Ady had shot at deer (other than the mule deer on White Bird Hill) during the hunting trip even though Ady did not have a deer tag. Ady denied it.

**10.** For example, Gochenour testified that Ady told him that Ady's father was a district judge (which so far as the record discloses may not have been a truthful statement). However, Ady testified he had no recollection of making such a statement.

evidence, and to draw all justifiable inferences. *State v. Decker, supra.*

Further discussion of the evidence in this case is unnecessary. We have already described and discussed the pertinent proof pointing to Ruiz' guilt. In sum, we find the jury's verdict to be supported by the evidence. The judgment of conviction on the offense of wasting a game animal is affirmed.

BURNETT, J., concurs.

SWANSTROM, Judge, concurring specially.

I concur specially in part I of this opinion to emphasize that this Court has not decided today whether a guilty verdict must be set aside if it is inconsistent with a not guilty verdict on a separate but related charge. Neither did we decide this question in *State v. Crawford,* 104 Idaho 840, 633 P.2d 1142 (Ct.App.1983). Today, as in *Crawford,* we simply do not reach the question. Our opinion also mentions a case decided by our Supreme Court, *State v. Garcia,* 102 Idaho 378, 630 P.2d 665 (1981). The Court in *Garcia* likewise did not need to decide the effect of inconsistent verdicts and the Court expressly reserved that question for a later day. It should be noted that both *Garcia* and *Crawford* were decided before the United States Supreme Court reaffirmed *Dunn* in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

ADDENDUM

Upon Denial of Petition for Rehearing

PER CURIAM.

By petition for rehearing, Ruiz asks for a further review of two points. First, he contends the trial court erred by refusing to give the accomplice instruction he had requested. *See* n. 8, *supra.* Second, he asserts the evidence was insufficient to establish that he left the slaughtered doe on White Bird Hill with the intent to waste the deer.

With regard to Ruiz' first point, we decline to address it on the merits. So far as we can glean from the record before us, it appears the instruction issue was never raised on the appeal from the magistrate division to the district court, and it was not raised before us until asserted in Ruiz' petition for rehearing. It is well settled that when an appeal is taken from an appellate court to a higher appellate court, the appellant may not raise issues different from those which he presented in the first appeal. *Centers v. Yehezkely,* 109 Idaho 216, 706 P.2d 105 (Ct.App.1985). Consequently, that issue will not be entertained.

As to the second point, Ruiz argues that the evidence showed he left the doe's carcass on the hillside with the intent to return and to retrieve it the next day. Consequently, he submits that the jury could not infer with the intended to waste the animal. We are not persuaded by this argument. We note that there was no evidence presented to show that Ruiz in fact returned or attempted to retrieve the deer. Throughout the trial Ruiz disclaimed any responsibility for the animal. It was within the province of the jury to draw reasonable inferences from the evidence, including an inference of Ruiz' intent. An inference that Ruiz intended to waste the deer would not be unreasonable in light of the evidence.

Accordingly, we adhere to our lead opinion. The petition for rehearing is denied.